Sean W. Drew (P33851)
DREW LAW OFFICE
302 Sycamore Street
P.O. Box 880
Niles, Michigan 49120
(269) 683-5121
drewlawoffice@gmail.com

Noah W. Drew (P74355)
THE SPENCE LAW FIRM
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
(307) 733-7290
drew@spencelawyers.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

| | |
|---|---|
| THE ESTATE OF JACK C. LUNNEEN, deceased, by Thomas E. Lunneen, personal representative, <br><br> Plaintiff, <br><br> vs. <br><br> BERRIEN SPRINGS, a village, ORONOKO TOWNSHIP, a municipal corporation, BERRIEN COUNTY, a municipal corporation, JAMES WYSS, in his individual capacity and in his official capacity as officer for Berrien Springs-Oronoko Township Police Department, ROGER JOHNSON, in his individual capacity and in his official capacity as a deputy for the Berrien County Sheriff's Department, L. PAUL BAILEY, in his individual capacity and in his official capacity as Sheriff of the Berrien County Sheriff's Department, PAUL E. TOLIVER, in his individual capacity and in his official capacity as Chief of Police for the Berrien Springs Oronoko Township Police Department, and JOHN DOES 1–10, *in their individual and official capacities*, <br><br> Defendants. | Civil No. |

---

**COMPLAINT AND DEMAND FOR TRIAL BY JURY**

---

This action is for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution against the above-named Defendants, jointly and severally, and in their respective individual and official capacities.

## INTRODUCTION

In the early morning hours of October 22, 2018, Berrien County Sheriff's Department Officer Roger Johnson and Berrien Springs-Oronoko Township Police Department's Officer James Wyss caused the death of Jack Lunneen. This killing was unlawful, unconstitutional, and without justification. Defendants Berrien County, through its Sheriff's Department and its Sheriff, Paul Bailey, failed to train and supervise Defendant Johnson and instituted unconstitutional policies and/or customs, including ratifying the use of excessive force. Defendants Berrien Springs and Oronoko Township, through its Police Department and its Chief of Police, Paul Toliver, failed to train and supervise Officer Wyss and instituted unconstitutional policies and/or customs, including ratifying the use of excessive force. As such, Defendants deprived Jack Lunneen of his right to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution. The Defendants' unconstitutional acts and omissions caused Jack Lunneen's death. Plaintiff Thomas Lunneen is the Personal Representative of Jack Lunneen's wrongful death estate and sues for damages individually and on behalf of the heirs-at-law and the wrongful death beneficiaries of Jack Lunneen. Plaintiff's claims are causes of action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States against the above-named Defendants, jointly and severally, in their respective individual and official capacities.

## JURISDICTIONAL STATEMENT

1.     This action arises under the laws of the United States, particularly under the provisions of the Fourth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act, Title 42 of the United States Code, §§ 1983 and 1988.

2.     This Court has federal question jurisdiction over Plaintiff's civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988.

3.     The Court has supplemental jurisdiction over Plaintiff's state tort law claims pursuant to 28 U.S.C. § 1367 as they are so related to claims in this action within original jurisdiction that they form part of the same case or controversy.

4.     At all relevant times, the acts described herein occurred in Berrien County, Michigan. As such, venue is proper under 28 U.S.C. § 1391(b).

## THE PARTIES

5.     Plaintiffs incorporate and adopt by reference all facts and allegations above as though fully set forth herein.

6.     Jack Lunneen ("Jack"), the Decedent, was a citizen of the United States and of the State of Michigan. At all relevant times, he was a resident of Berrien County, Michigan.

7.     Plaintiff Thomas Lunneen is a citizen of the United States and of the State of Michigan.

8.     Plaintiff Thomas Lunneen is the Personal Representative of the Estate of Jack Lunneen, with all the attendant powers and obligations provided by Michigan law.

9.     Defendant Berrien Springs is a village located within Oronoko Charter Township, Michigan. Berrien Springs and the Oronoko Township are provided police services by Defendant Berrien Springs-Oronoko Township Police Department, which is a municipal body.

10.     Defendants Berrien Springs and Oronoko Township, through its agents and employees, are responsible for, and does in fact, hire, train, supervise, and instruct police officers in all grades in the performance of their duties.

11.     Defendant Paul Toliver is, and was at all relevant times to this action, the Chief of Police for the Berrien Springs-Oronoko Township Police Department with final policy-making authority. At all relevant times and in all actions described herein, Defendant Toliver was the commanding officer of Officer Wyss and was responsible for Defendant Wyss's training, supervision, and conduct, and is alleged to have acted under color of state law. As Chief of Police, Defendant Wyss was responsible for the overall administration of department operations and direction of the department's planning and research efforts, fiscal management, training initiatives, and professional standards, as well as for ensuring his personnel obey the laws of the State of Michigan and of the United States of America. He is sued in his individual and official capacities.

12.     Defendant James Wyss is and was at all relevant times a citizen of the State of Michigan. At all relevant times, he was a police officer duly appointed and employed by the Berrien Springs-Oronoko Township Police Department. Defendant Wyss acted in his individual and official capacities and under the color of state law. At all relevant times, Defendant Wyss was an agent, servant, and employee of the Berrien Springs-Oronoko Township Police Department. Defendant Wyss is sued in his individual and official capacities.

13.     Defendants Berrien County, through its agents and employees, is responsible for, and does in fact, hire, train, supervise, and instruct police officers in all grades in the performance of their duties.

14.     Defendant Paul Bailey is, and was at all relevant times to this action, a citizen of the State of Michigan. At all relevant times, Defendant Bailey was the Sheriff for the Berrien County Sheriff's Office with final policy-making authority. At all relevant times and in all actions described herein, Defendant Bailey was the commanding officer of Officer Johnson and was responsible for Defendant Johnson training, supervision, and conduct, and is alleged to have acted under color of state law. As Sheriff, Defendant Bailey was responsible for the overall administration of department operations and direction of the department's planning and research efforts, fiscal management, training initiatives, and professional standards, as well as for ensuring his personnel obey the laws of the State of Michigan and of the United States of America. He is sued in his individual and official capacities.

15.     Defendant Roger Johnson is and was at all relevant times a citizen of the State of Michigan. At all relevant times, he was a police officer duly appointed and employed by the Berrien County Sheriff's Department. Defendant Johnson acted in his individual and official capacities and under the color of state law. At all relevant times, Defendant Johnson was an agent, servant, and employee of the Berrien County Sheriff's Department. Defendant Johnson is sued in his individual and official capacities.

16.     Each and every act of Defendants was by and under the color of law and pretense of statutes, ordinances, regulations, law, custom, and usage of either the County of Berrien Springs, the Berrien Springs village, or the Oronoko Township, and was by virtue under the authority of the Defendants' employment or agency relationship with the same, as a municipal entity, corporation, or body, and within the scope of their employment and duties.

17.     The true names of John Does I-X are presently unknown to Plaintiff.  Plaintiff is informed and believes that each of the said John Does I–X are or were at all relevant times

citizens of the State of Michigan and were either agents, ostensible agents, servents, and/or elected officials of Berrien County, Michigan, the Village of Berrien Springs, Michigan, and/or Oronoko Township, Michigan.

18.     Plaintiff is further informed and believes that some—if not not all—John Does I–X have final policy-making authority for Berrien County, Michigan, the Village of Berrien Springs, Michigan, and/or Oronoko Township, Michigan, and the respective law enforment entities.

19.     Plaintiff is further informed and believes that each of said John Does I–X in some way, manner or form, and to some extent caused detriment, damage and injury to Jack Lunneen, deceased, and/or Plaintiff as alleged, and that only Defendants Berrien County, the Village of Berrien Springs, Oronoko Township, Sheriff L. Paul Bailey, Chief Paul E. Toliver, Deputy Roger Johnson and/or Officer James Wyss know or have reason to know the true identities and capacities of said John Does.

20.     It is further believed that the John Does I–X were either Defendant Johnson's or Defendant Wyss's supervisors responsible for their training and supervison; or employees and/or agents of the defendant municipal entities responsible or responsible for  the investigation into the death of Jack Lunneen.

21.     At all material times, John Does I–X are alleged to have been acting under the color of state law, and Plaintiff brings this lawsuit against the John Does I–X in their individual capacities and official capacities.

22.     Plaintiff will seek leave of this Court to amend this Complaint to include the true names of the John Does I–X as soon as such information becomes known to Plaintiff.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

23.     Plaintiffs incorporate and adopt by reference all facts and allegations above as though fully set forth herein.

24.     In early morning hours of October 22, 2018, Defendant Wyss and Defendant Johnson were on duty officers for their respective departments.

25.     The autopsy report notes the Query of National Oceanic and Atmospheric Administration noted the maximum temperature was 56 degrees Fahrenheit; the minimum temperature was 34 degrees Fahrenheit.

**A Woman Calls 9-1-1**

26.     Around 1:23 a.m., a woman in Berrien Springs called 9-1-1 to report that a man had been circling her home, yelling for help. According to the woman, the man had pushed her air conditioning unit through her window and the window broke.

27.     The woman described that the man was wearing black pants and no shirt.

28.     The suspect was later identified as Jack Lunneen.

29.     Defendant Wyss responded to the dispatch.

30.     Defendant Wyss went to the home of the woman who called 9-1-1.

31.     Defendant Wyss upon interviewing the woman who call 9-1-1 learned from her that the alleged suspect was yelling, "help."

32.     Defendant Wyss was in a fully-marked patrol vehicle, a full police uniform, and was equipped with a department-issued body camera.

33.     Defendant Johnson also responded to the dispatch and did so by canvassing the area to locate Jack.

34. Defendant Johnson was in a fully-marked patrol vehicle, a full police uniform, and equipped with a department-issued body camera.

35. After speaking with the woman who called 9-1-1, Defendant Wyss began to canvass the area on foot. Defendant Wyss did this until Defendant Johnson informed Wyss that he had a visual on Jack.

36. Defendant Wyss then got into his patrol vehicle and drove to where Jack and Defendant Johnson were.

37. Upon information and belief, Defendants Johnson and Wyss personally knew Jack prior to their encounter on October 22, 2018.

**Interaction with Jack, Rogers, and Wyss**

38. Upon seeing Jack, Defendant Johnson parked his patrol vehicle and exited it.

39. Jack was bare foot and bare chested, wearing only sweat pants.

40. Jack was 67 inches tall, weighed 228 pounds, and had a plainly obvious bulbous abdomen.

41. As Jack walked towards the passenger side of the patrol vehicle, Defendant Johnson ordered Jack to return to the front of the patrol vehicle.

42. Jack complied with this request.

43. Defendant Johnson then forcefully commanded Jack to "stay right there!" meaning to stay at the front of the vehicle.

44. Jack, now at the front of the vehicle, began walking towards Defendant Johnson.

45. Defendant Johnson then pointed his taser light on Jack's chest and yelled "stay right there, I'm not playing with you."

46.     Jack then asked for help, and kneeled on the ground at the front of Defendant Johnson's patrol vehicle.

47.     Jack asked Defendant Johnson: "Are you guys going to kill me?"

48.     Defendant Johnson said "No."

49.     Defendant Wyss arrived in his vehicle.

50.     At some point, Defendant Johnson asked to dispatch a paramedic and, in doing so, mentioned that Jack had "excited delirium of some sort."

51.     Once Defendant Wyss was near Jack and Defendant Johnson, Jack stood up to speak to them.

52.     Jack had to use the grill guard on Defendant Johnson's patrol car to gain balance in order to stand up.

53.     Jack then admitted and disclosed that he was an addict and stated that he needed help.

54.     Jack, still talking to Defendant Johnson and Defendant Wyss, began to walk away from the Defendant Johnson's patrol car.

55.     Defendant Johnson asked Defendant Wyss if "he had pc", apparently meaning probable cause to arrest Jack.

56.     Defendant Wyss erroneously claimed that he did.

57.     At no time did Defendant Johnson or Defendant Wyss tell Jack he was under arrest.

58.     Nevertheless, Defendant Johnson and Defendant Wyss began to close in on Jack. Defendant Wyss reached for Jack's arm, but Jack brushed it off.

59.     Defendant Johnson and Defendant Wyss recognized Jack had mental health issues and drug addiction issues.

60.     Defendant Johnson believed he and Defendant Wyss were "trying to play nice, thinking [Jack] was mental."

61.      Defendant Johnson again put his taser light on Jack's chest and said, "get down on your knees or we'll tase you."

62.     Afraid, Jack continued to try and run away from the officers who he believed were going to kill him.

63.     Jack continued to yell for help.

64.     Defendant Johnson and Defendant Wyss continued to try and arrest Jack, but they never told him he was under arrest.

65.     Defendant Johnson repeated commands such as: "Get down on your knees or I'll tase you."

66.     Eventually Defendant Johnson employed his taser and the electric probes hit Jack in the chest.

67.     Jack pulled the taser off, ran away, and continued to scream for help.

68.     When Jack pulled the taser off, Defendant Wyss said: "Alright, he's going down."

69.     Defendant Johnson called for back-up and told Defendant Wyss to pepper spray Jack.

70.     Defendant Wyss pepper sprayed Jack in the face.

71.     This allowed Defendant Johnson and Wyss to close in on Jack, and a physical struggle between the three then ensued.

72.     Defendant Johnson and Defendant Wyss wrestled Jack to the ground and forced him to lay face down on the cold ground in order to handcuff him.

73.     Defendant Johnson and Defendant Wyss struck Jack with closed fists and knees as they wrestled him to the ground.

74.     Jack continued to yell for help and resist the physical and excessive force.

75.     Defendant Johnson started pushing Jack's face into the ground to get him to roll over. Defendant Johnson pushed on Jack's face for at least twenty-five seconds.

76.     Jack's statements gradually faded to grunts and groans.

77.     And then—for the first time since the interaction began—Jack went silent.

78.     Jack laid on the cold ground, face down, handcuffed, with his pants down far enough to expose his genitals and buttocks.

79.     The physical struggle lasted approximately two minutes.

80.     Defendant Johnson and Defendant Wyss realized Jack was unresponsive and turning grey.

81.     Defendant Johnson is a trained first responder with training on Basic Life Support ("BLS") and first aid.

82.     Upon information and belief, Defendant Johnson possessed an automated electronic defibrillator in his patrol vehicle.

83.     Defendant Wyss is a trained first responder with training on BLS and first aid.

84.     Upon information and belief, Defendant Wyss possessed an automated electronic defibrillator in his patrol vehicle.

85.     Nevertheless, Defendant Wyss made sarcastic comments such as, "this uniform is getting washed."

86.     Nevertheless, Defendant Wyss kept a hand on Jack's handcuffed hands.

87.     Neither Defendant Wyss nor Defendant Johnson tried to roll Jack on to his side or back.

88.     Neither Defendant Wyss nor Defendant Johnson tried to perform BLS or other resuscitation measures.

89.     Defendant Wyss's body camera footage reveals that the police officers continued to discuss "excited delirium."

90.     Defendant Wyss's body camera footage reveals that the police officers exchanged report information.

91.     Defendant Johnson's body camera footage reveals a conversation where he admits that he had previous encounters with Jack such that he knew Jack was subject to mental illness of some sort and alleged methamphetamine use.

92.     Approximately seven minutes and sixteen seconds elapses from the time Jack went unresponsive to an EMT beginning to render medical attention.

93.     Following resuscitation measures at the scene, Jack was transported to Lakeland Medical Center Emergency Room, St. Joseph, Michigan, where he was pronounced dead at 2:30 a.m.

94.     In total, the interaction between Defendant Johnson, Defendant Wyss, and Jack lasted six approximately minutes, beginning with the arrival of Defendant Wyss and ending when Jack went unresponsive and grey.

95.     During those six minutes, Jack yelled for help approximately 50 times, which equates to a cry for help every six seconds.

96.     During those six minutes, Jack asked Defendants Johnson and Rogers "why" approximately seven times.

97.     During those six minutes, Jack asked whether Defendants were going to kill him three times.

***Medical Examiner and Autopsy:***

98.     The ambulatory paramedics' report stated they were dispatched for excited delirium.

99.     The medical examiner noted there were multiple abrasions on his face, chest, abdomen, hands, arms, elbows, knees, lower legs, and feet, as well as blood on his face and hands.

100.    The medical examiner lists the cause of death as excited delirium associated with methamphetamine use and cardiomegaly, likely hypertensive.

101.    The autopsy report also noted the cause of death was excited delirium associated with methamphetamine use.

102.    The autopsy report defined excited delirium.

103.    The autopsy report then stated: "There is significant debate in the medical community regarding manner of death certification in excited delirium deaths associated with law enforcement intervention. There are reasonable arguments for invoking a manner of death of accident or homicide."

104.    The autopsy report then stated: "the manner of death is best certified as indeterminate."

105.    Excited delirium is not a recognized medical condition by the World Health Organization, the American Psychiatric Association, or the American Medical Association.

*Investigations*

106.  Defendant Wyss called Defendant Toliver after the paramedics took Jack to the hospital.

107.  Defendant Wyss told Defendant Toliver that he and Defendant Johnson "got into a fight with a junkie and he might have died."

108.  Defendant Wyss told Defendant Toliver that Jack "decided he wanted to start fighting and when [Defendant Wyss and Defendant Johnson] finally got him on the ground, he just stopped completely and went grey."

109.  Defendant Wyss told Defendant Toliver that "it blew up in his face."

110.  Defendant Wyss and Defendant Johnson were placed on administrative leave with pay effective immediately pending internal investigations.

111.  The Michigan Department of State Police investigated the death.

112.  The Berrien County Prosecutor's Office declined to prosecute the case,.

### FIRST CLAIM FOR RELIEF

***Violation of Clearly Established Civil Rights Guaranteed by the U.S. Constitution and 42 U.S.C. § 1983—Excessive Force—Defendant Wyss in his individual and official capacities***

113.  Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

114.  This claim is authorized by 42 U.S.C. § 1983 and the United States Constitution, including the Fourth and Fourteenth Amendments thereto.

115.  At all relevant times, Defendant Wyss was employed by the Berrien Springs-Oronoko Township Police Department and was acting within the course and scope of his employment as a law enforcement officer, under the color of state law, clothed with the authority that was granted to him as a Berrien Springs-Oronoko Township police officer.

116.    As it relates to this First Claim for Relief, Defendant Wyss is named in both his official and individual capacities.

117.    Decedent had a protected liberty interest under the United States Constitution in not being subjected to unreasonable force or cruel and unusual punishment amounting to the deliberate indifference to his safety.

118.    Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Wyss owed Decedent the duty to act prudently, with reasonable care, and to otherwise avoid the use of unnecessary, unreasonable, and excessive force, to avoid unlawful activity, and to not act deliberately indifferent to Decedent's safety and well-being.

119.    That the above described assault, battery, extreme violence, and unreasonable use of excessive force was against Decedent without legal justification or provocation.

120.    Defendant Wyss negligently, maliciously, wrongfully, recklessly, and unjustifiably disregarded the ramifications of his actions by using unlawful force or otherwise depriving Decedent of his civil rights, including but not limited to his right to be free from excessive force without the due process of law, contrary to the United States Constitution while acting within the course and scope of his employment.

121.    At all relevant times, Defendant Wyss was deliberately indifferent towards Decedent and his well-being and his constitutionally protected rights to be free from unreasonable force or extreme violence without the due process of law, contrary to the United States Constitution while acting within the course and scope of his employment.

122.    The above described acts committed by Defendant Wyss violated Decedent's constitutional rights under the Fourth and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. § 1983 to be free from deprivation of life and liberty and to be free from a deliberate indifference to his safety and well-being all of which were violated, without due process of law, by the conduct of Defendant Wyss as described herein.

123.    As a direct and proximate result of the acts and omissions of Defendant Wyss as alleged in this Complaint, Decedent was killed. Decedent is therefore entitled to damages as more particularly set forth below in the section of this Complaint entitled "Damages."

**SECOND CLAIM FOR RELIEF**
***Violation of Clearly Established Civil Rights Guaranteed by the U.S. Constitution and 42***
***U.S.C. § 1983—Excessive Force—Defendant Johnson in his individual and official capacities***

124.    Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

125.    This claim is authorized by 42 U.S.C. § 1983 and the United States Constitution, including the Fourth and Fourteenth Amendments thereto.

126.    At all relevant times, Defendant Johnson was employed by the Berrien County Sheriff's Department and was acting within the course and scope of his employment as a law enforcement officer, under the color of state law, clothed with the authority that was granted to him as a Berrien County Sheriff's Department police officer.

127.    As it relates to this First Claim for Relief, Defendant Johnson is named in both his official and individual capacities.

128.    Decedent had a protected liberty interest under the United States Constitution in not being subjected to unreasonable force or cruel and unusual punishment amounting to the deliberate indifference to his safety.

129.    Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Johnson owed Decedent the duty to act prudently,

with reasonable care, and to otherwise avoid the use of unnecessary, unreasonable, and excessive force, to avoid unlawful activity, and to not act deliberately indifferent to Decedent's safety and well-being.

130.     That the above described assault, battery, extreme violence, and unreasonable use of of force was  against Decedent without legal justification or provocation.

131.     Defendant Johnson negligently, maliciously, wrongfully, recklessly, and unjustifiably disregarded the ramifications of his actions by using unlawful force or otherwise depriving Decedent of his civil rights, including but not limited to his right to be free from excessive force without the due process of law, contrary to the United States Constitution while acting within the course and scope of his employment.

132.     At all relevant times, Defendant Johnson was deliberately indifferent towards Decedent and his well-being and his constitutionally protected rights to be free from unreasonable force or extreme violence without the due process of law, contrary to the United States Constitution while acting within the course and scope of his employment.

133.     The above described acts committed by Defendant Johnson violated Decedent's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from deprivation of life and liberty and to be free from a deliberate indifference to his safety and well-being all of which were violated, without due process of law, by the conduct of Defendant Johnson as described herein.

134.     As a direct and proximate result of the acts and omissions of Defendant Johnson as alleged in this Complaint, Jack died and suffered the damages as more particularly set forth below in the section of this Complaint entitled "Damages."

### THIRD CLAIM FOR RELIEF
***Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983—Fourth and Fourteenth Amendment—Unconstitutional Conditions of Detainment—Defendant Johnson in his individual and official capacities***

135.     Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

136.     Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Johnson owed Decedent the duty to act prudently, with reasonable care, and to otherwise avoid the use of unnecessary, unreasonable, and excessive force, to avoid unlawful activity, and to not act deliberately indifferent to Decedent's safety and well-being.

137.     Decedent had a protected liberty interest under the United States Constitution in not being subjected to unreasonable force or cruel and unusual punishment amounting to the deliberate indifference to his safety.

138.     Defendant Johnson made an intentional decision regarding the conditions under which Decedent was detained.

139.     The conditions of detainment put Decedent at substantial risk of suffering serious harm;

140.     Defendant Johnson did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of Decedent's conduct obvious.

141.     By not taking such measures, Defendant Johnson caused Decedent's death and Plaintiff's injuries as more fully set forth below in the section titled "Damages."

## FOURTH CLAIM FOR RELIEF

*Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983—Fourth and Fourteenth Amendment—Unconstitutional Conditions of Detainment—Defendant Wyss in his individual and official capacities*

142.     Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

143.     Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Wyss owed Decedent the duty to act prudently, with reasonable care, and to otherwise avoid the use of unnecessary, unreasonable, and excessive force, to avoid unlawful activity, and to not act deliberately indifferent to Decedent's safety and well-being.

144.     Decedent had a protected liberty interest under the United States Constitution in not being subjected to unreasonable force or cruel and unusual punishment amounting to the deliberate indifference to his safety.

145.     Defendant Wyss made an intentional decision regarding the conditions under which Decedent was detained.

146.     The conditions of detainment put Decedent at substantial risk of suffering serious harm;

147.     Defendant Wyss did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of Decedent's conduct obvious.

148.     By not taking such measures, Defendant Wyss caused Decedent's death and Plaintiff's injuries as more fully set forth below in the section titled "Damages."

## FIFTH CLAIM FOR RELIEF

***Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983—Fourth and Fourteenth Amendment—Unconstitutional Denial of Medical Care—Defendant Johnson in his individual and official capacities***

149.   Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

150.   Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Johnson owed Decedent the duty to act prudently, with reasonable care, and to otherwise avoid the use of unnecessary, unreasonable, and excessive force, to avoid unlawful activity, and to not act deliberately indifferent to Decedent's safety and well-being.

151.   Decedent had a protected liberty interest under the United States Constitution in not being subjected to unreasonable force or cruel and unusual punishment amounting to the deliberate indifference to his safety.

152.   Defendant Johnson made an intentional decision regarding the denial of medical care.

153.   The denial of medical care put Decedent at substantial risk of suffering serious harm;

154.   Defendant Johnson did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of Decedent's conduct obvious.

155.   Defendant Johnson was deliberately indifferent to Jack's serious medical condition.

156.    By not taking such measures, Defendant Johnson caused Decedent's death and Plaintiff's injuries as more fully set forth below in the section titled "Damages."

**SIXTH CLAIM FOR RELIEF**
*Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983—Fourth and Fourteenth Amendment—Unconstitutional Denial of Medical Care—Defendant Wyss in his individual and official capacities*

157.    Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

158.    Decedent had a protected liberty interest under the United States Constitution in not being subjected to unreasonable force or cruel and unusual punishment amounting to the deliberate indifference to his safety.

159.    Pursuant to 42 U.S.C. § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Wyss owed Decedent the duty to act prudently, with reasonable care, and to otherwise avoid the use of unnecessary, unreasonable, and excessive force, to avoid unlawful activity, and to not act deliberately indifferent to Decedent's safety and well-being.

160.    Defendant Wyss made an intentional decision regarding the denial of medical care.

161.    The denial of medical care put Decedent at substantial risk of suffering serious harm;

162.    Defendant Wyss did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of Decedent's conduct obvious.

163.    Defendant Wyss was deliberately indifferent to Jack's serious medical condition.

164.    By not taking such measures, Defendant Wyss caused Decedent's death and Plaintiff's injuries as more fully set forth below in the section titled "Damages."

**SEVENTH CLAIM FOR RELIEF**

*Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983—Unconstitutional Policy or Custom, Failure to Train, Failure to Supervise— Berrien Springs and Oronoko Township, Chief of Police Toliver – in his official and individual capacities, and John Does One Through Five*

165.    Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

166.    This count is authorized by 42 U.S.C. § 1983 and the Constitution of the United States, including the Fourth and Fourteenth Amendments thereto.

167.    As policy maker for Berrien Springs and Oronoko Township and or the Berrien Springs-Oronoko Township, Chief of Police Toliver and/or John Does One through Five had the authority to make, change, or maintain final decisions affecting policies and customs without constraint. Chief of Police Toliver and John Does One through Five are being sued in both their individual and official capacities.

168.    At all times relevant, Defendants Chief of Police Toliver and/or John Does One through Five were employed by or were agents of Berrien Springs and/or Oronoko Township and/or Berrien Springs-Oronoko Township Police Department and were acting within the course and scope of their employment as law enforcement officers under the color of state law and clothed with the authority that was granted to them as a final policy maker of the Berrien Springs and/or Oronoko Township and/or Berrien Springs-Oronoko Township Police Officer.

169.    The policies and customs of the Berrien Springs-Oronoko Township Police Department, as created and/or maintained by Berrien Springs and/or Oronoko Township, Chief of Police Toliver, and/or John Does One through Five exhibited deliberated indifference to the

constitutional rights of persons in Berrien Springs, Michigan, and Oronoko Township, Michigan, and those policies and/or customs caused the violation of Decedent's civil rights.

170.    The policy and/or custom of Berrien Springs and/or the Oronoko Township, Chief of Police Toliver, and/or John Does One through Five and as created and/or maintained by Berrien Springs and/or Oronoko Township Chief of Police Toliver, and/or John Does One through Five was to inadequately supervise and/or train its police officers, including Defendant Wyss.

171.    When Defendant Wyss unlawfully and unjustifiably attacked and physical assaulted Decedent on October 22, 2018, said acts were not in violation of the policies and procedures of the Berrien Springs-Oronoko Township Police Department as maintained by Chief of Police Toliver and/or Berrien Springs and/or Oronoko Township which at the time were completely inadequate, improper, and unconstitutional.

172.    The policies and customs of Berrien Springs and/or the Oronoko Township and its police department as created and/or maintained by Berrien Springs, the Oronoko Township, Chief of Police Toliver, and/or John Does One through Five demonstrate a deliberate indifference on the part of the policy makers of the Berrien Springs-Oronoko Township Police Department and were the cause of the violations of Decedent's rights.

173.    The rules, edicts, or acts of Berrien Springs, the Oronoko Township, Chief of Police Toliver, and/or John Does One through Five represented official policy or custom which when executed as described above inflicted injury upon Decedent thereby violating his civil rights.

174. The unconstitutional conduct of Berrien Springs, the Oronoko Township, Chief of Police Toliver, and/or John Does One through Five as alleged herein, includes but is not limited to the following:

   a. Failing to properly train and/or supervise its police officers, including Defendant Wyss, in the areas of excessive force; and

   b. Failing to implement and/or enforce a policy, custom, practice, or procedure for encountering citizens with mental health and/or drug abuse issues.

175. That the de facto policy of failing to train, screen, discipline, supervise, transfer, remove, and/or control errant officers, including Defendant Wyss, is evidenced by its allowing Defendant Wyss to remain with the police department when Defendant Berrien Springs and Defendant Oronoko Township and its policymakers entrusted him into an unsupervised position with unlimited authority over detained, helpless, and vulnerable individuals within the custody and control of the Berrien Springs-Oronoko Township Police Department.

176. All of the above acts and/or failures to act on behalf of Defendants Berrien Springs, Defendant Oronoko Township, Chief of Police Toliver, and/or John Does One through Five makes them active participants, giving them actual and/or constructive knowledge that their subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Decedent.

177. As a direct and proximate result of the acts and omissions of Defendants Berrien Springs and/or Oronoko Township, Chief of Police Toliver, and/or John Does One through Five as alleged in this Complaint, Decedent was injured and suffered the damages as more particularly set forth below in the section of this Complaint entitled "Damages."

## EIGHTH CLAIM FOR RELIEF

***Violation of Clearly Established Civil Rights Guaranteed by the Constitution and 42 U.S.C. § 1983—Unconstitutional Policy or Custom, Failure to Train, Failure to Supervise— Berrien County, Sheriff Paul Bailey in is official and individual capacities, and John Does Six through Ten***

178.    Plaintiff incorporates and adopts by reference all facts and allegations above as though fully set forth herein.

179.    This count is authorized by 42 U.S.C. § 1983 and the Constitution of the United States, including the Fourth and Fourteenth Amendments thereto.

180.    As policy maker for Berrien County and/or the Berrien County Sheriff's Department, Sheriff Bailey and/or John Does One through Five had the authority to make, change, or maintain final decisions affecting policies and customs without constraint. Defendant Bailey and John Does Six through Ten are being sued in both their individual and official capacities.

181.    At all times relevant, Defendant Paul Bailey, and/or John Does Six through Ten were employed by or were agents of the Berrien County and/or the Berrien County Sheriff's Department and were acting within the course and scope of their employment as law enforcement officers under the color of state law and clothed with the authority that was granted to them as a final policy maker of Berrien County and/or Berrien County Sheriff's Department.

182.    The policies and customs of the Berrien County Sheriff's Department, as created and/or maintained by Berrien County, Defendant Bailey, and/or John Does Six through Ten exhibited deliberated indifference to the constitutional rights of persons in Berrien County, Michigan, and those policies and/or customs caused the violation of Decedent's civil rights.

183.    The policy and/or custom of the Berrien County, Defendant Bailey, and/or John Does Six through Ten and as created and/or maintained by Berrien County, Defendant Bailey,

and/or John Does Six through Ten was to inadequately supervise and/or train its police officers, including Defendant Johnson.

184.    When Defendant Johnson unlawfully and unjustifiably attacked and physical assaulted Decedent on October 22, 2018, said acts were not in violation of the policies and procedures of the Berrien County Sheriff's Department as maintained by Defendant Bailey and/or Berrien County which at the time were completely inadequate, improper, and unconstitutional.

185.    The policies and customs of Berrien County and its Sheriff's Department as created and/or maintained by Berrien County, Sheriff Bailey, and/or John Does Six through Ten demonstrate a deliberate indifference on the part of the policy makers of the Berrien County Sheriff's Department and were the cause of the violations of Decedent's rights.

186.    The rules, edicts, or acts of Defendant Berrien County, Defendant Bailey, and/or John Does Six through Ten represented official policy or custom which when executed as described above inflicted injury upon Decedent thereby violating his civil rights.

187.    The unconstitutional conduct of Berrien County, Defendant Bailey, and/or John Does Six through Ten as alleged herein, includes but is not limited to the following:

   a.   Failing to properly train and/or supervise its police officers, including Defendant Johnson, in the areas of excessive force;

   b.   Failing to implement and/or enforce a policy, custom, practice, or procedure for encountering citizens with mental health and/or drug abuse issues.

188.    That the de facto policy of failing to train, screen, discipline, supervise, transfer, remove, and/or control errant officers, including Defendant Johnson, is evidenced by its allowing Defendant Johnson to remain with the Sheriff's Department when Defendant Berrien County and its policymakers knew he had a propensity for reckless and deliberately indifference misconduct

and entrusting him into an unsupervised position with unlimited authority over detained, helpless, and vulnerable individuals within the custody and control of Berrien County.

189. All of the above acts and/or failures to act on behalf of Defendants Berrien County, Defendant Bailey, and/or John Does Six through Ten makes them active participants, giving them actual and/or constructive knowledge that their subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like Decedent.

190. As a direct and proximate result of the acts and omissions of Defendants Berrien County, Defendant Bailey, and/or John Does Six through Ten as alleged in this Complaint, Decedent was injured and suffered the damages as more particularly set forth below in the section of this Complaint entitled "Damages."

### NINTH CLAIM FOR RELIEF
#### *Gross Negligence against Defendant Wyss and Defendant Johnson*

191. Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

192. Defendants Wyss and Johnson owed Decedent, Jack Lunneen, the duty to refrain from using deadly force until they had exhausted all other reasonable means of effecting his detainment and/or arrest.

193. Defendants Wyss and Johnson, wantonly and recklessly breached that duty by using excessive and/or deadly force on Jack Lunneen without the slightest attempt to use alternative means to apprehend him, where they knew those means were available, and intentionally failed to use them.

194. As a proximate result of that gross negligence, plaintiff suffered death, pain and suffering, loss of earnings and earning capacity, loss of enjoyment of life, disfigurement, emotional overlay and medical care, all past, present and future.

195.    As a direct and proximate result of the acts and omissions of Defendants Johnson and Wyss, Decedent was injured and suffered the damages as more particularly set forth below in the section of this Complaint entitled "Damages."

**TENTH CLAIM FOR RELIEF**
*Violations of State Law and Michigan Constitutional Guarantees against Defendants Berrien County, Michigan, Berrien Springs, Michigan, and Oronoko-Township, Michigan*

196.    Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

197.    The laws of the State of Michigan and regulations of Berrien County, Michigan, Berrien Springs, Michigan, and/or Oronoko Township, Michigan and its police department currently allow the use of excessive and/or deadly force to arrest nonviolent criminal suspects.

198.    These laws, orders and regulations are in violation of the United States and Michigan constitutional guarantees of due process, equal protection and freedom from cruel and unusual punishment in that:

a.  they allow the use of excessive and/or deadly force against a nonviolent criminal suspect without any showing that the officer suspected the person to be armed, or that the suspect was likely to harm the officer or to endanger human life unless apprehended without delay; and

b.  they perpetuate a situation where a nonviolent criminal suspect may be tased, pepper sprayed, beaten and/or denied medical care with impunity under the rules of certain localities in this state, whereas rules of other localities within this state would prohibit this conduct under exactly the same circumstances.

199.    The unconstitutional provisions of state law and Berrien County, Michigan, Berrien Springs, Michigan, and/or Oronoko Township, Michigan law enforcement orders and regulations which allow the use of excessive and/or deadly force against a nonviolent criminal suspect were a proximate cause of plaintiff's injuries and damages.

200.    As a proximate result of these constitutional violations, pursuant to governmental custom and practice, plaintiff suffered severe and permanent physical injuries, pain and

suffering, loss of earnings and earning capacity, disfigurement, emotional overlay and medical care, all past, present and future.

201.    As a direct and proximate result of the acts and omissions of Defendants Berrien County, Michigan, Berrien Springs, Michigan, and Oronoko-Township, Michigan, Decedent was injured and suffered the damages as more particularly set forth below in the section of this Complaint entitled "Damages."

### DAMAGES

202.    Plaintiff incorporates and adopts by reference all the facts and allegations above as though fully set forth herein.

203.    As a direct and proximate result of Defendants' unconstitutional and willful misconduct, and negligent acts and omissions as set forth herein, Decedent sustained the following damages in excess of the jurisdictional requirement of this Court:

    a.  All economic damages available pursuant to 42 U.S.C. §§ 1983 and 1988;

    b.  All non-economic damages available pursuant to 42 U.S.C. §§ 1983 and 1988;

    c.  Punitive damages against only the Defendants named in their individual capacities;

    d.  Attorney fees and costs for all claims for relief pursuant to 42 U.S.C. §§ 1983 and 1988;

    e.  Pre-judgment interest; and

    f.  All allowable costs, expenses, and fees associated with this litigation.

WHEREFORE, Plaintiff Thomas Lunneen, as the Personal Representative of the Wrongful Death Estate of Jack Lunneen, prays that the Court enter judgment against Defendants, jointly and severally, in an amount supported by the allegations of this Complaint, as follows:

I.     Judgment against Defendants, jointly and severally, for general damages in an amount consistent with the allegations contained herein and to be proven at trial;

II.    Judgment against Defendants, jointly and severally, for special damages in a reasonable sum but not less than seventy-five thousand dollars consistent with the allegations contained herein and to be proven at trial;

III.   Judgment for punitive damages against each individual Defendant in an amount to be determined by the triers of fact;

IV.    An award of attorney fees and costs for all claims for relief within the Complaint pursuant to 42 U.S.C. §§ 1983 and 1988; and

V.     Judgment for costs, interest, and such other and further relief as the Court deems just and equitable.

Respectfully submitted this 21st day of October, 2020.

*Attorney for Plaintiff*
Noah W. Drew
THE SPENCE LAW FIRM
15 S. Jackson St., P.O. Box 548
Jackson, WY  83001
307-733-7290 (p)
307-733-5248 (f)
drew@spencelawyers.com

## JURY DEMAND

Plaintiff respectfully requests that this case be tried to a jury under Rule 38 of the Federal

Rules of Civil Procedure.

Respectfully submitted this 21st day of October, 2020.

*Attorney for Plaintiff*
Noah W. Drew
THE SPENCE LAW FIRM
15 S. Jackson St., P.O. Box 548
Jackson, WY  83001
307-733-7290 (p)
307-733-5248 (f)
drew@spencelawyers.com