**EXHIBIT C**

# MICHAEL M. BADEN, M.D.

15 West 53rd Street, Suite 18
New York, New York 10019

Telephone: (212) 397-2732   Facsimile:  (212) 397-2754
E-mail:  MBaden@mac.com

17 January 2022

Via e-mail to drew@spencelawyers.com

Noah Drew, Esq.
The Spence Law Firm
15 South Jackson Street
Post Office Box 548
Jackson, Wyoming 83001

    Re:    *Jack Luneen, deceased*

Dear Mr. Drew:

I have reviewed the autopsy and toxicology reports, medical examiner file, heart examination, autopsy photographs, the Taser download log, scene videos and audios, microscopic slides, ambulance report, Lakeland St. Joseph's Hospital Emergency Room report, sheriff and police reports, prosecutor reports, report of Police Officer James N. Wyss, and the deposition testimony of Dr. Elizabeth A. Douglas that you sent to me relative to the death of Jack Clement Luneen.

According to Officer Wyss' report, Mr. Luneen had bicycled up to him in his patrol car about 1:15 a.m. on October 22, 2018, appeared to be confused, said he needed help but then rode away.  A few minutes later he received a Berrien County

Dispatch to respond to a malicious destruction of property (MDOP) complaint: a man without a shirt had broken a window in a house then ran away yelling. Sgt. Johnson called Officer Wyss a few minutes later and said he was with that person in a parking lot. Officer Wyss responded, noted that he was the same person who had ridden over to him on the bicycle and that he stood up "and told us that he was an addict and had reached the end and he did not want anyone to kill him, … he appeared to be unaware of his surroundings … was shouting." Officer Wyss wrote that Mr. Luneen did not obey commands and ran when they tried to handcuff him. They then tased him and pepper sprayed him directly in his face the irritation from which can interfere with breathing.

Officer Wyss wrote that "We attempted to bring Jack down to the ground to execute prone handcuffing, but Jack pushed against us. I was able to sweep Jack's legs from under him … and brought Jack to the ground." During the struggle, partially captured in the videos, Jack was turned face down with Sgt. Johnson and Officer Wyss "attempting to pull Jack's arms behind Jack's back" to handcuff him. Also, during the struggle "I applied pressure to Jack's mandibular nerve … Jack stopped moving after I cuffed both hands" and he was bleeding from his nose and was unresponsive. He was lifeless when the paramedics arrived and he was

declared dead at 2:30 a.m. on arrival at the Lakeland St. Joseph Hospital Emergency Room.

Sgt. Johnson's report to the Berrien County Sheriff's Department states that he and Officer Wyss "took Luneen to the ground" because "he refused to comply with our verbal commands. Officers struggled with Luneen for approximately 2 minutes prior to getting a handcuff onto Luneen's left wrist and then onto his right wrist." He stopped resisting. "I believed he was … nodding into an unconscious stupor."

The scene bodycam videos show Mr. Luneen shirtless with an obese protuberant abdomen walking in the parking lot and telling the two police officers that he has a methamphetamine problem and repeats "don't kill me." When police attempt to handcuff him he runs away chased by the police who tase and pepper spray him. He goes to the ground on his back. Within 91 seconds he is rolled over by police into the prone position and pressure is applied to his back during the attempts to handcuff him. One officer is heard to say that he was having trouble breathing then loses consciousness, and an ambulance is called for. No CPR is attempted for about seven minutes when Lucas chest compression is started on his motionless body before the ambulance arrives.

According to the Michigan State Police analysis of the scene videos, there was only 138 seconds of physical contact between the police and Mr. Luneen before dispatch was called to say that he was "having trouble breathing," was not moving and needed an ambulance. The Taser download shows that only one Taser device was used. It was discharged three times for five seconds each time -- for a total of 15 seconds -- in less than one minute.

At autopsy Mr. Luneen is described as a 51-year-old white male who is 69 inches tall and weighs approximately 220 pounds. The autopsy report does describe 74 separate abrasions and contusions on his face, head, neck, abdomen, back and extremities, including taser perforations, indicative of a severe struggle. There are large areas of hemorrhage in the soft tissues and deep muscles of the mid and lower back bilaterally, evidence of severe prone back pressure. The facial injuries are evidence that his nose and mouth were pressed against the ground which also interfered with Mr. Luneen's ability to breathe. Two petechiae were present near the left eye. The heart was enlarged to 550 grams. The liver was enlarged with mild fatty change. The stomach contained 1000 cc of partially chewed material and beige liquid; it was not tested toxicologically. Iliac blood contained a recreational amount of methamphetamine.

Dr. Douglas writes in her autopsy report that "Law enforcement deployed an electronic control device and oleoresin capsicum spray with minimal response from the decedent.  Law enforcement officers eventually wrestled the decedent to the ground and restrained him in the prone position with his hands behind his back using handcuffs.  Within two minutes of being restrained he became unresponsive.  Attempts to resuscitate him were unsuccessful."

However, Dr. Douglas determined the cause of death to be "Excited delirium associated with methamphetamine use" and that the manner of death was "Indeterminate."  I must disagree.

Excited delirium is a controversial diagnosis not recognized by the American Medical Association or the American Psychiatric Association.  The AMA's position is that there is not medical evidence to support the existence of such a condition and has denounced its use as a false means of justifying excessive use of force by law enforcement.  Proponents of excited delirium claim that death is caused by the victim's adrenal glands producing too much adrenaline -- the decedent kills himself -- but high levels of adrenaline have not been found to be present.  Human rights groups charge that the diagnosis of excited delirium is a means of whitewashing police use of excessive force.

In 1995, 25 years ago, the National Law Enforcement Technology Center, a National Institute of Justice program, released a position paper entitled "Positional asphyxia – sudden death" recognizing that prone restraint techniques should be avoided to lessen in-custody deaths.  Pressure on the prone back, as occurs when police try to approximate the wrists while attempting to handcuff someone who is resisting, forces the abdominal organs upwards against the diaphragms.  This prevents the diaphragms from moving downward and expanding the lungs which is necessary to inhale air and oxygen.  This is why victims cry out that "I can't breathe."  They truly can't inhale.  It is not a manipulation as some police believe.  Death can occur in less than one minute from prone pressure especially if CPR is not instituted immediately.

It is my opinion, to a reasonable degree of medical certainty, based on my education, training and experience, and on the above materials that I have reviewed, that the cause of Mr. Luneen's death was not excited delirium; that he died because of the way in which he was restrained by the police which prevented him from breathing; that he was having delusions caused by recreational use of methamphetamine; that the large hemorrhages in his back are evidence of severe prone back pressure; that CPR was delayed for seven minutes; and that the cause of Mr. Luneen's death was "Traumatic asphyxia during restraint by prone back

Baden/Luneen
17 January 2022
Page -7-

pressure, pepper spray and taser use" and the manner of death was "Homicide" because it was caused by the hands of others.

My opinions are subject to modification should additional information become available to me.

Very truly yours,

*Michael M. Baden*

Michael M. Baden, M.D.
Former Chief Medical Examiner,
 New York City
Former Chief Forensic Pathologist,
 New York State Police

MMB:ph