# Exhibit 1

*Plaintiff's Supplemental Expert Witness Disclosure*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| THE ESTATE OF JACK C. LUNNEEN, deceased, by Thomas E. Lunneen, personal representative,<br><br>Plaintiff,<br><br>vs.<br><br>BERRIEN SPRINGS, a village, ORONOKO TOWNSHIP, a municipal corporation, BERRIEN COUNTY, a municipal corporation, JAMES WYSS, in his individual capacity and in his official capacity as officer for Berrien Springs-Oronoko Township Police Department, ROGER JOHNSON, in his individual capacity and in his official capacity as a deputy for the Berrien County Sheriff's Department, L. PAUL BAILEY, in his individual capacity and in his official capacity as Sheriff of the Berrien County Sheriff's Department, PAUL E. TOLIVER, in his individual capacity and in his official capacity as Chief of Police for the Berrien Springs Oronoko Township Police Department, and JOHN DOES 1–10, in their individual and official capacities,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**SUPPLEMENTAL EXPERT REPORT OF JEFFREY J. NOBLE**

1. My name is Jeffrey J. Noble, and I make this supplemental report at the request of plaintiff's counsel.

2. In preparing this report, I have reviewed the following materials:

    - Depositions
        - Chuck Heit
            - Exhibit 9 – Notice of Deposition
            - Exhibit 10 – Defendant Berrien County's Response to Plaintiff's Schedule of Documents for 30(b)(6) deposition
            - Exhibit 11 – Berrien County Sheriff Policy – Internal Affairs

1

- - - Exhibit 12 – Berrien County Sheriff's Department Policy – Use of Force
      - Exhibit 13 – Memo to investigating Officer
      - Exhibit 14 – Emails and Attachments
  - Eric Hyun
      - Exhibit 9 – Notice of Deposition
      - Exhibit 15 – Training Documentation
      - Exhibit 16 – Berrien County Sheriff Department Policy – Use of Force
      - Exhibit 17 – Training Inventory Form
  - Paul Toliver

**The Berrien County Sheriff's Department and the Village of Berrien Springs-Oronoko Township Police Department Ratified the Misconduct of Sergeant Johnson and Officer Wyss by Failing to Conduct a Reasonable Administrative Investigation**

3. Police officers have awesome powers over the people whom they serve. Police officers have the legal authority to detain, search and arrest, and use force without first seeking approval from a neutral magistrate, or even from their own supervisors. While these powers have helped the police enforce the laws and control suspects, they also have the potential to be abused. The fact that a police officer can handcuff and take someone to jail, deprive a person of their most basic civil liberties, and use force, including deadly force, demands that the police be strictly accountable for their actions.

4. Internal affairs is a generic term that refers to the function of investigating the police or to the police organizational unit responsible for that function. The objective of internal, or administrative investigation include: 1) protection of the public by identifying and modifying improper action of the police; 2) recommending changes to policies, procedures, and training to improve the delivery of services; 3) protection of the department by resolving instances of misconduct to ensure the public's trust and support; 4) send a message to officers that allegations of misconduct are taken seriously and that misconduct will not be tolerated; and 5) protection of the employee against false allegations of misconduct by conducting fair, thorough, and accurate investigations.

5. When there are potential criminal allegations that the officer's actions may amount to a crime, there should two concurrent investigations. The first investigation is to determine of the officer committed a crime. That investigation is driven by criminal statutes and the standard to prove those allegations is the criminal standard of beyond a reasonable doubt. An administrative investigation is driven by department policy and the standard of proof is merely by a preponderance of the evidence.

6. Here, there were allegations that Sergeant Johnson and Officer Wyss may have engaged in criminal conduct due to their actions that resulted in the death of Mr. Lunneen.

      Appropriately, the criminal investigation was given to an outside agency, the Michigan State Police, for investigation. The Michigan State Police Department's investigation focused solely on whether or not Sergeant Johnson, Officer Wyss, or both, committed a crime in their uses of force against Mr. Lunneen. The Michigan State Police did not conduct an investigation to determine if Sergeant Johnson or Officer Wyss violated their department policies.

7. Neither the Berrien County Sheriff's Department, nor the Village of Berrien Springs-Oronoko Township Police Department conducted an administrative investigation into the conduct of Sergeant Johnson and Officer Wyss.

8. The Berrien County Sheriff's department did not conduct an administrative investigation, rather they relied on reviewing the criminal investigation and reviewing the body worn camera videos. They did not conduct any interviews or interrogations and they did not prepare a report of their investigation or their findings.

    a. Undersheriff Heit testified that he does not see a difference between a criminal investigation and an administrative investigation. He said the Berrien County Sheriff's Department does not conduct separate criminal and administrative investigations.[1]

        1.) Undersheriff Heit said he, along with the Sheriff and the Chief Deputy, viewed the body worn cameras of Sergeant Johnson and Officer Wyss[2] and they did not find a violation of the department's policy or procedures.[3]

        2.) Undersheriff Heit said there is no report that documents his efforts and no formal findings were made.[4]

        3.) While Undersheriff Heit said he did not believe Sergeant Johnson violated any department policy, he acknowledged that the department has a policy on positional asphyxia that an arrestee should not be prone for an extended period of time. Undersheriff Heit said the sheriff's department provided training on positional asphyxia and acknowledged that someone could suffocate if left in a prone position.[5]

        4.) Undersheriff Heit said Mr. Lunneen appeared to be "somewhat" on his side.[6]

---

[1] Heit deposition at 77.
[2] Heit deposition at 108.
[3] Heit deposition at 116.
[4] Heit deposition at 118-119.
[5] Heit deposition at 85-87.
[6] Heit deposition at 124.

3

       5.) Undersheriff Heit acknowledged that he heard one of the officer say Mr. Lunneen was turning grey on the body worn videos, but no one sat Mr. Lunneen up or rolled him onto his back and no one asked Sergeant Johnson why he failed to place Mr. Lunneen into a recovery position.[7]

       6.) While Undersheriff Heit said he relied on the Medical Examiner's determination that Mr. Lunneen's cause of death was excited delirium and methamphetamine intoxication,[8] he did not explain why Mr. Lunneen's cause of death, even if it was unrelated to positional asphyxia, was related to a policy violation of failing to place Mr. Lunneen in a recovery position or to render medical aid when it was obvious he was turning grey due to oxygen deprivation.

       7.) Instead, it appears that Undersheriff Heit relies on his belief that Officer Wyss was monitoring Mr. Lunneen and that his department policy states a person cannot be left in a prone position unless they are being monitored. But it is entirely pointless to monitor someone and simply watch them suffer difficulty breathing and not take any action.

   b. Lieutenant Hyun said the sheriff department trains its deputies to handcuff from a prone position and then roll the person onto their side and sit them up after they have been handcuffed.[9] Lieutenant Hyun said if the arrestee is not being compliant, they may remain in a prone position until they are not a danger to themselves or the officers.[10] However, if the arrestee is exhibiting symptom that they cannot breathe or other health concerns, they should be immediately rolled onto their side.[11] Moreover, if a arrestee is prone and non-responsive, they should be rolled onto their side as soon as possible.[12] Lieutenant Hyun said deputies are trained to continually monitor the arrestee's breathing and if they see the arrestee turning grey they need to take immediate action to roll them onto their side.[13]

9. Similarly, the Village of Berrien Springs-Oronoko Township Police Department did not conduct an administrative investigation, nor did they prepare a report outlining their investigation and documenting their findings.

---

[7] Heit deposition at 125-127.
[8] Heit deposition at 130.
[9] Hyun deposition at 27
[10] Hyun deposition at 28-29.
[11] Hyun deposition at 29.
[12] Hyun deposition at 30-31.
[13] Hyun deposition at 34.

4

      a.      Chief Toliver said the state police conducted the criminal investigation[14] and he reviewed Officer Wyss' body worn camera video.[15] Chief Toliver said he found that Officer Wyss did not commit any policy violation.[16]

           1.)    Chief Toliver acknowledged that his department policy directs officers to be concerned about the prone position and states in all capital letters to avoid placing a person in a prone position.[17]

           2.)    Chief Toliver said from watching the video, he believes Mr. Lunneen was not laying flat on his stomach, but was in a three-quarter position on his side[18] as his right shoulder appeared higher than his left shoulder.[19]

           3.)    Chief Toliver acknowledged that Officer Wyss made no effort to place Mr. Lunneen in a seated position[20] and said he never asked Officer Wyss why he failed to place Mr. Lunneen in a recovery position.[21]

           4.)    Chief Toliver said it is his belief that Mr. Lunneen was unconscious and Officer Wyss did place him in a recovery position by sitting him up.[22]

           5.)    Chief Toliver said when it is safe to do so, an officer should move a person out of a prone position to ensure they do not become deprived of oxygen as soon as possible[23] and his department training instructs officers to get a person to a position where they can freely breathe as soon as possible.[24]

10.    Here both the Berrien County Sheriff's Department and the Village of Berrien Springs-Oronoko Township Police Department state that they have policies and training to prevent positional asphyxia by directing officers to place a suspect in a recovery position on their side or by sitting them up once the person is in custody. Moreover, both departments have policies and training to provide emergency medical care to a suspect in their custody when it becomes obvious that the person is in need of immediate medical care.

---

[14] Toliver deposition at 51.
[15] Toliver deposition at 55.
[16] Toliver deposition at 69.
[17] Toliver deposition at 70-71.
[18] Toliver deposition at 72.
[19] Toliver deposition at 75.
[20] Toliver deposition at 77.
[21] Toliver deposition at 78.
[22] Toliver deposition at 79-80.
[23] Toliver deposition at 83.
[24] Toliver deposition at 85

11. While both departments acknowledge their policies and training, neither department conducted an administrative investigation into the actions of their officers. The body worn videos clearly show that neither officer made any effort to place Mr. Lunneen in a recovery position after he was handcuffed and that neither officer took any action to move Mr. Lunneen or to render medical aid when it was obvious that Mr. Lunneen was unconscious and turning "grey." Any reasonable sheriff or chief of police would recognize that the failure of Sergeant Johnson and Officer Wyss to take the simple step of moving an arrestee onto their side to ensure their ability to freely breathe would be a violation of the training and their policy, they would have sustained allegations of misconduct and they would have imposed disciplinary actions to ensure that similar misconduct does not occur in the future.

12. One of the purposes of an administrative investigation is to review the department's policies and training and the failure of either department to even conduct an interview of their officers to determine if they know and understood the reason for placing someone in the recovery position prevented the departments from reviewing their policies and training to ensure all of their officers were properly trained to ensure similar misconduct does not occur in the future.

13. Instead, both departments ratified the misconduct of their officers. The Berrien County Sheriff's Department formed the excuse that while Mr. Lunneen was left in a prone position he was "monitored" and Mr. Lunneen did not die from positional asphyxia according to the Medical Examiner thus somehow the policy was not violated and the Village of Berrien Springs-Oronoko Township Police Department came to the conclusion that Mr. Lunneen was partially on his side thus their policy was not violated. The failure to investigate and hold their officers accountable for their misconduct sent a message to these officers and their entire department that they can ignore their policies and training with impunity.

_____    _5/9/22_____
Jeffrey J. Noble                                                  Date