THE ESTATE OF JACK C. LUNNEEN,
Deceased, by Thomas E. Lunneen,
Personal Representative
        Plaintiff,

      vs.

BERRIEN SPRINGS, a village, ORONOKO
TOWNSHIP, a municipal corporation, BERRIEN
COUNTY, a municipal corporation, JAMES WYSS,
in his individual capacity and in his official
capacity as officer for Berrien Springs-Oronoko
Township Police Department, ROGER JOHNSON,
in his individual capacity and in his official
capacity as a deputy for the Berrien County
Sheriff's Department, L. PAUL BAILEY, in his
individual capacity and in his official capacity as
Sheriff of the Berrien County Sheriff's Department,
PAUL E. TOLIVER, in his individual capacity and
In his official capacity as Chief of Police for the
Berrien Springs Oronoko Township Police
Department, and JOHN DOES 1-10,
        Defendants.

Case 1:20-cv-01007-HYJ-PJG

HON. HALA Y. JARBOU

**BRIEF IN SUPPORT OF
DEFENDANTS BERRIEN
COUNTY, L. PAUL BAILEY,
AND ROGER JOHNSON'S
MOTION FOR SUMMARY
JUDGMENT PURSUANT TO
RULE 56(a)**

**CERTIFICATE OF
COMPLIANCE RE WORD
COUNT**

---

Sean W. Drew (P33851)
Attorney for Plaintiff
Drew Law Office
302 Sycamore St., POB 880
Niles, MI 49120
(269) 683-5121
drewlawoffice@gmail.com

Noah W. Drew (P74355)
Emily S. Madden
Mel C. Orchard, III
Attorneys for Plaintiff
The Spence Law Firm
15 S. Jackson St., POB 548
Jackson, WY 83001
(307) 733-7290
drew@spencelawyers.com
madden@spencelawyers.com
orchard@spencelawyers.com

James T. McGovern (P79410)
James M. Straub (21083)
Attorneys for Defs. Berrien County,
L. Paul Bailey and Roger Johnson
Straub, Seaman & Allen, P.C.
1014 Main St., POB 318
St. Joseph, MI 49085
(269) 982-1600
jmcgovern@lawssa.com
jstraub@lawssa.com

G. Gus Morris (P32960)
Robert W. VanWert  (P70957)
Attorneys for Defs. Berrien Springs
Oronoko Twp., Wyss and Toliver
McGraw Morris, P.C.
2075 W. Big Beaver Road, Ste. 750
Troy, MI  48084
(248) 502-4000
gmorris@mcgrawmorris.com
rvanwert@mcgrawmorris.com

---

## BRIEF IN SUPPORT OF DEFENDANTS
## BERRIEN COUNTY, PAUL BAILEY AND ROGER JOHNSON'S MOTION FOR
## SUMMARY JUDGMENT PURSUANT TO RULE 56(a)

---

\*      \*      \*


## \*\*\*ORAL ARGUMENT REQUESTED\*\*\*

**BRIEF IN SUPPORT OF DEFENDANTS**
**BERRIEN COUNTY, PAUL BAILEY AND ROGER JOHNSON'S MOTION FOR**
**SUMMARY JUDGMENT PURSUANT TO RULE 56(a)**

**\*\*\*ORAL ARGUMENT REQUESTED\*\*\***

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    STANDARD OF REVIEW ................................................................................ 3

III.   FACTUAL BACKGROUND ............................................................................ 3

IV.   APPLICABLE LAW AND ANALYSIS ......................................................... 7

     A.     Qualified Immunity Standard ................................................................ 7

     B.     Sgt. Johnson's Actions Were Objectively Reasonable and, Thus
           is Entitled to Summary Judgment on Plaintiff's Excessive Use of
           Force Claims ............................................................................................... 8

           i.      Plaintiff's Use of Force Expert Implicitly Admits that
                 Sgt. Johnson's Taser Use was Reasonable ................................. 9

           ii.     The Question of Lunneen's Placement After Arrest is
                 More Properly Viewed as a Denial of Medical Care
                 Question and Not Use of Force ...................................................... 11

     C.     Sgt. Johnson Did Not Act With Deliberate Indifferences as to
           Providing Medical Attention and is Entitled to Summary Judgment
           On the 42 U.S.C. § 1983 Fourteenth Amendment Denial of Medical
           Attention Claim ......................................................................................... 13

     D.     Plaintiff's Monell Claims for Unconstitutional Policy or Custom,
           Failure to Train, and Failure to Supervise against Berrien County
           and Sheriff Bailey Have No Factual Basis and Defendants are
           Entitled to Summary Judgment as a Matter of Law ....................... 16

V.     CONCLUSION ...................................................................................................17

     PROOF OF SERVICE ....................................................................................... 18

     CERIFICATE OF COMPLIANCE – WORD COUNT ............................ 19

# INDEX OF AUTHORITIES

**CASES**

*Anderson v. Creighton*, 483 U.S. 635, 646 (1987) ........................................................................ 8
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................... 3
*Bazzi v. City of Dearborn*, 658 F3d 598, 606-607 (6th Cir 2011) ................................................ 8
*Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F3d 201, 205 (6th Cir 1995) ...................................... 3
*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986) .................................................. 3
*City of Canton, Ohio v. Harris*, 489 US 378, 389 (1989) ...................................................... 16,17
*Cochran v. Gilliam*, 656 F3d 300, 306 (6th Cir 2011) ................................................................ 8
*Collins v. City of Harker Heights, Texas*, 503 US 15, 112 S. Ct. 1061,
    117 L.Ed.2d. 261 (1992) ....................................................................................................... 17
*Doe v. Claiborne County, Tennessee*, 103 F3d 495, 507 (6th Cir 1996) ..................................... 17
*Garner v. Memphis Police Department*, 8 F3d 350, 364 (6th Cir 1993) .................................... 17
*Graham v. Connor*, 490 U.S. 386, 396 (1989) .......................................................................... 10
*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ......................................................................... 7
*Hearring v. Sliwowski*, 712 F3d 275, 279 (6th Cir 2013) ............................................................ 8
*Kentucky v. Graham*, 473 US 159, 165-166 (1985) ................................................................... 16
*Klepper v. First Am. Bank*, 916 F3d 337, 342 (6th Cir 1990) ...................................................... 3
*Livermore v. Lubelan*, 476 F3d 397, 407 (6th Cir 2007) ........................................................... 11
*Marcilis v. Township of Redford*, 693 F3d 589, 598 (6th Cir 2012) ............................................ 8
*Moldowan v. City of Warren*, 578 F3d 351, 375 (6th Cir 2009) .................................................. 8
*Monell v. Department of Social Security*, 436 US 658 (1978) ................................................ 16,17
*Pearson v. Callahan*, 555 U.S. 223 (2009) ................................................................................. 8
*Rich v. City of Mayfield Heights*, 955 F2d 1092 (6th Cir 1992) ................................................ 14
*Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) ........................................................................... 8
*Soper v. Hoben*, 195 F3d 845, 853 (6th Cir 1999) .................................................................... 16
*Thomas v. City of Columbus*, 854 F3d 361 (6th Cir 2017) ........................................................ 14
*Williams v. City of Gross Pointe Park*, 496 F3d 482, 486 (6th Cir 2007) ................................. 10


**RULES**

Fed. R. Civ. P. 56(a) .............................................................................................................. 3, 18


**OTHER AUTHORITIES**

42 U.S.C. §1983 ...................................................................................................................... 16,17

# I.     **INTRODUCTION**

This case involves the October 22, 2018 in-custody death of Jack Lunneen.  On that date, at approximately 1:24 a.m., a resident in Berrien Springs, Michigan called 911 and stated that a man running around her house broke her window and pulled out her air conditioner.  Berrien Springs-Oronoko Township Police Officer James Wyss (Co-Defendant) responded to the call and Berrien County Sheriff's Department Sergeant Roger Johnson (a Defendant subject to this motion) responded to assist.

Sgt. Roger Johnson is an 18-year veteran of the Berrien County Sheriff's Department.  He located the suspect, now known as Lunneen, and initiated verbal contact.  Soon after, and prior to any physical contact or attempted restraint or arrest, Sgt. Johnson called dispatch and requested a medic due to his suspicion of "excited delirium of some sort."  Sgt. Johnson then proceeded to issue more than 20 verbal commands to Lunneen over a two-minute period in an attempt to gain compliance from Lunneen and control of the situation.  Officer Wyss was also at the scene at this time and he, too, issued commands in an attempt to gain compliance.  Lunneen continued to disregard each of the officers' numerous commands as he walked away from the officers.  Lunneen then began to run as the officers continued to yell verbal commands without laying hands on the fleeing suspect.  Both officers yelled commands for compliance to no avail.

Ultimately, and after numerous verbal warnings regarding taser use, Sgt. Johnson deployed his taser.  The taser was ineffective.  Then Officer Wyss deployed pepper spray.  Soon after, both officers made physical contact with Lunneen and he was taken to the ground and restrained.  Lunneen resisted while both officers worked to place handcuffs.  Within three seconds after handcuffing, the officers stood up.  Within a minute of being restrained in handcuffs, the officers noticed that Lunneen had lost consciousness.  Sgt. Johnson then called dispatch in an attempt to

speed up the already called EMT. The EMT arrived at the wrong scene (where the patrol cars were parked in the location of first contact with the suspect) and Sgt. Johnson flagged down the EMT in an attempt to get the EMT's attention to locate to the current scene. Sgt. Johnson, again, called dispatch in an attempt to relocate the EMT to the correct location. The EMT arrived on scene and then Sgt. Johnson assisted him in attempting to resuscitate Lunneen. These efforts were unsuccessful.

Mr. Lunneen's Estate has asserted that Lunneen's Fourth Amendment and Fourteenth Amendment rights were violated, claiming that the force used against Lunneen by Sgt. Johnson was excessive and that Lunneen was denied adequate medical care. Defendants Johnson, Bailey and Berrien County (hereinafter "Berrien Defendants") have denied the claims of the Estate. The Berrien Defendants posit in their Motion, as supported by this Brief, that under the totality of circumstances the force used against Lunneen was not excessive and that numerous affirmative attempts were made to avoid the use of force and that the force undertaken was reasonable.

Further, while the Estate claims Lunneen was denied access to medical care, the Berrien Defendants contend that the facts viewed in a light most favorable to the Estate demonstrate just the opposite. Defendant Sgt. Johnson's affirmative acts in an attempt to obtain medical care before, and immediately after the arrest, justify the dismissal of the denial or delay of medical care claims.

Additionally, Officer Johnson is entitled to qualified immunity from assertions of excessive force or denial/delay of medical care.

Lastly, the Estate alleges that Berrien County and the Berrien County Sheriff's Department's policies, practices, and customs led to a failure of proper training or supervision of Defendant Johnson. Berrien County and Sheriff Bailey respond that there is no evidence to

establish that the alleged factors were the moving force leading to the alleged incident and that they are entitled to summary judgment.

## II.     STANDARD OF REVIEW

A court may grant summary judgment where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1]  The moving party can meet its initial burden of demonstrating the absence of a genuine dispute of material fact by informing the Court of the basis for its motion, and identifying those portions of the pleadings, affidavits, and other evidence on file that it believes demonstrates the absence of a genuine issue of material fact.[2]  Once the initial burden is met, the non-moving party cannot rest on its pleadings, but must present specific probative evidence in support of its claim or defense, that a genuine issue of material fact exists.[3]  Importantly, a mere scintilla of evidence is insufficient.  Rather, in order to avoid summary judgment, the non-movant must provide "evidence on which the jury could reasonably find for the [non-movant]."[4]

## III.     FACTUAL BACKGROUND

For the purposes of this factual background section, Berrien Defendants rely on the summary of events provided by Plaintiff's own expert, Jeffrey J. Noble.  Where appropriate, these statements are supplemented by reference to the audio recorded on Sgt. Johnson's body camera to provide additional context.

---

[1]     FRCP 56(a).

[2]     *Celotex Corp v Catrett*, 477 US 317, 106 S. Ct. 2548 (1986).

[3]     *Bill Call Ford, Inc v Ford Motor Co,* 48 F3d 201, 205 (6th Cir 1995); *Anderson v Liberty Lobby, Inc*, 477 US 242, 106 S. Ct. 2505 (1986).

[4]     *Anderson*, 477 US at 252; see also *Klepper v First Am Bank*, 916 F2d 337, 342 (6th Cir 1990).

On October 22, 2018, at about 1:24 a.m., Ms. Eileen Dry called 911 to report that a man had been circling her home and yelling for help. According to Ms. Dry, the man had pushed her window mounted air conditioning unit through her window causing the window to break.[5] Berrien Springs-Oronoko Township Police Department Officer James Wyss was dispatched to the call and spoke with Ms. Dry who told him that the suspect, later identified as Jack Lunneen, had been yelling "help" and beat on her window causing her window mounted air conditioner to fall into her home and breaking her window.[6] Berrien County Sheriff's Department Sergeant Roger Johnson responded to the area to assist and he conducted a canvass to locate the suspect.

Both officers were wearing police uniforms and were driving marked police vehicles.[7] Officer Wyss saw Lunneen as he was speaking with Ms. Dry. Officer Wyss searched for the suspect on foot as Sgt. Johnson located and approached the suspect, Lunneen, a short distance from Ms. Dry's home. Lunneen was bare foot and wearing only sweatpants in 30-degree weather.[8] Lunneen walked to the passenger side of Sgt. Johnson's patrol car and Sgt. Johnson ordered him to return to the front of the patrol car. Mr. Lunneen complied and went to the front of the patrol car. Mr. Lunneen began to walk toward Sgt. Johnson and Sgt. Johnson ordered him to stop. Lunneen asked for help then kneeled on the ground in front of the patrol car.[9] Less than a minute after making first contact with Lunneen, Sgt. Johnson radioed to dispatch and requested a medic while stating that Lunneen appeared to be in a state of "excited delirium."[10] A few seconds later,

---

5    ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 12.
6    ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 13.
7    ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 14.
8    ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 15.
9    ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 16.
10   ECF No. 57-15, PageID.600-601; Officer Roger Johnson Body Camera Interaction Markers. First contact at marker 1:10:21, Request for medic at marker 2:00:02.

Lunneen asked for, and was given, permission to, stand up.[11] Lunneen then stated that he was an addict and that he was "climaxing".[12] Lunneen then attempted to walk away from the officers.[13] Sgt. Johnson and Officer Wyss conferred and agreed that there was probable cause for an arrest.[14] Plaintiff's expert, Mr. Noble, agrees that at this time there was enough reasonable suspicion to justify a *Terry* stop[15] as well as probable cause to arrest Lunneen.[16] Therefore, in a light most favorable to the Plaintiff it is uncontroverted that it was reasonable for Sgt. Johnson to stop and question Lunneen and that there was probable cause to detain and arrest Lunneen.

Next, Lunneen tried to flee from the officers by walking away and as he did he continued to yell for help.[17] Sgt. Johnson repeated commands that included "Get on your knees or I'll tase you."[18] Over the course of the next one and a half minutes, Sgt. Johnson issued 19 distinct commands to Lunneen to turn around, put his hands on his back, and/or to get down on his knees.[19] Each of the 19 commands for compliance were disregarded. After disregarding the 19 verbal commands and numerous warnings that he would deploy his taser, Sgt. Johnson then deployed his taser.[20] The taser was ineffective because Lunneen pulled the taser wires off his chest and while

---

[11] ECF No. 57-15, PageID.601; Officer Roger Johnson Body Camera Interaction Markers. Lunneen requests permission to stand at 2:16:12 and is told "that's fine" at 2:19:00.

[12] ECF No. 57-15, PageID.601; Officer Roger Johnson Body Camera Interaction Markers. Lunneen explains he was an addict at 2:25:26 and that he was "climaxing" at 2:30:06.

[13] ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 17.

[14] ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 19.

[15] ECF No. 57-1, PageID.356; Expert Report of Jeffrey Noble, ¶ 32.

[16] ECF No. 57-1, PageID.357; Expert Report of Jeffrey Noble, ¶ 35.

[17] ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 19.

[18] ECF No. 57-1, PageID.334; Expert Report of Jeffrey Noble, ¶ 20.

[19] ECF No. 57-15, PageID.601-602; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson instructs Lunneen to turn around twice between 3:08:18 and 3:11:21. Officer Johnson instructs Lunneen to put his hand behind his back four times between 3:13:01 and 3:23:06, including one distinct statements of prospective taser use. Officer Johnson instructs Lunneen to get down on his knees fourteen times between 3:26:23 and 4:28:03, including two statements of prospective taser use.

[20] ECF No. 57-1, PageID.334-335; Expert Report of Jeffrey Noble, ¶ 20.

he proceeded to evade the officers, Officer Wyss pepper sprayed Lunneen.[21] Plaintiff's expert, Mr. Noble, agrees that at this time, the use of pepper spray on Lunneen was "objectively reasonable and consistent with generally accepted police practices."[22] Sergeant Johnson and Officer Wyss then took Mr. Lunneen to the ground and struggled to control him.[23] Plaintiff's expert, Mr. Noble, agrees that at this time, "[t]he use of a take down and the control holds used to place handcuffs on Mr. Lunneen were objectively reasonable and consistent with generally accepted police practices."[24] The officers then handcuffed Lunneen while all three were on the ground.[25] Within three seconds of applying the handcuffs Sgt. Johnson stands up.[26] Therefore, in a light most favorable to the plaintiff it is uncontroverted that it was reasonable for Sgt. Johnson to "take down" Lunneen and use control holds to place handcuffs on Lunneen.

Both officers stood up after they placed handcuffs on Lunneen. Approximately 20 seconds after Lunneen was handcuffed Sgt. Johnson again radioed dispatch and requested that they speed up the medic and stated that Lunneen was having trouble breathing.[27] Dispatch advised that the paramedics were nearby and Sgt. Johnson advised them the situation was a "priority one."[28] The paramedics arrived in the general area but then proceeded to drive to the wrong location and Sgt. Johnson made attempts to flag down the EMT (waiving his hands and using his flashlight in an

---

[21]   *Id.*
[22]   ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 42(b).
[23]   ECF No. 57-1, PageID.334-335; Expert Report of Jeffrey Noble, ¶ 20.
[24]   ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 43(c).
[25]   ECF No. 57-1, PageID.335; Expert Report of Jeffrey Noble, ¶ 21.
[26]   **Exhibit A** - Johnson Body-Camera Video Footage – Handcuffs "click" shut at 5:49:36 and Johnson stands at 5:39:38 as shown in upper-right-hand corner time stamp.
[27]   ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Lunneen is handcuffed at 7:41:16. Johnson radios into dispatch at 7:55:26 and reports Lunneen as having trouble breathing at 8:06:06.
[28]   ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Dispatch advises that they are "just passing the fairgrounds" at 8:25:24; Officer Johnson advised it was a "priority one" at 8:26:14.

attempt to shine it in their direction) to redirect their location.[29]  Sgt. Johnson then crossed the road

in another attempt to flag down and yell to the EMT.[30]  Paramedics then drove down the block and

arrived on scene approximately three (3) minutes after Lunneen was handcuffed and two and a

half minutes after Sgt. Johnson radioed to dispatch that Lunneen was having trouble breathing.[31]

Sgt. Johnson then asked the EMT what he could do to assist the EMT and Sgt. Johnson was told

to retrieve a chest compression device from the EMT vehicle – of which he immediately did.[32]

Mr. Lunneen was transported to Lakeland Medical Center Emergency Room, St. Joseph,

Michigan.  Lunneen was pronounced dead.[33]  The Medical Examiner found the cause of death was

excited delirium associated with methamphetamine use.[34]

## IV.    APPLICABLE LAW AND ANALYSIS

### A.    Qualified Immunity Standard

Qualified immunity protects government officials in the performance of their discretionary

duties by shielding them from "liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known."[35]  The essential purpose of qualified immunity is to provide government officials with

---

[29]    ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson sees the EMT vehicle at the wrong building and comments "comeon, look around" at 8:51:25.

[30]    ECF No. 57-15, PageID.603-604; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson crosses street and yells "Over here!" at 9:51:04.

[31]    ECF No. 57-15, PageID.603-604; Officer Roger Johnson Body Camera Interaction Markers. Lunneen is handcuffed at 7:41:16. Johnson radios into dispatch at 7:55:26 and reports Lunneen as having trouble breathing at 8:06:06. Paramedics arrive on scene at 10:41:11.

[32]    ECF No. 57-15, PageID.605; Officer Roger Johnson Body Camera Interaction Markers. Johnson grabs LUCAS out of Paramedics expedition at 12:55:07. LUCAS is a chest compression device.

[33]    ECF No. 57-1, PageID. 335; Expert Report of Jeffrey Noble, ¶ 24.

[34]    ECF No. 57-1, PageID. 335; Expert Report of Jeffrey Noble, ¶ 25.

[35]    *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).

the ability to reasonably anticipate when their conduct may give rise to liability and to know that "they will not be held personally liable as long as their actions are reasonable in light of current American law."[36]

The Sixth Circuit has instructed that the qualified immunity standard is one of objective reasonableness and that courts should engage in " 'a fact-specific, case-by-case' inquiry focused on 'whether a reasonable official in the defendant's position could have believed that his conduct was lawful, judged from the perspective of the reasonable official on the scene.' "[37]  In particular, courts should inquire at the summary judgment stage "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established."[38]  Where a defendant officer raises the defense of qualified immunity as an affirmative defense then the plaintiff bears the burden of demonstrating that the officer is not entitled to that defense.[39]

**B.**     **Sgt. Johnson's Actions Were Objectively Reasonable and, Thus is Entitled to Summary Judgment on Plaintiff's Excessive Use of Force Claims**

All of Sgt. Johnson's actions in relation to the October 22, 2017 incident were objectively reasonable in light of the circumstances then existing.  In most respects, this does not appear to be in actual dispute.  As noted above, the Plaintiff's own expert, Mr. Noble, opines and concedes that the actions of both officers were reasonable under the circumstances.  Noble concedes there was

---

[36]     *Anderson v. Creighton*, 483 U.S. 635, 646 (1987).

[37]     *Marcilis v. Township of Redford*, 693 F.3d 589, 598 (6th Cir. 2012) (quoting *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011)).

[38]     *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 606-607 (6th Cir. 2011)); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)(established two- prong test for assessing qualified immunity). Courts may decide which of the two questions to address first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

[39]     *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009).

enough reasonable suspicion to justify a *Terry* stop[40] as well as enough probable cause to arrest Lunneen.[41] After that point, Lunneen ignored the officers' 20+ verbal commands instructing Lunneen to stop, put his hands behind his back, and to get on his knees. Sgt. Johnson gave numerous verbal warnings that he would deploy his taser if Lunneen failed to comply. This led to Sgt. Johnson deploying the taser but it did not assist in gaining compliance. Mr. Noble concedes that the use of pepper spray on Lunneen was "objectively reasonable and consistent with generally accepted police practices."[42] Ultimately, however, Lunneen could only be brought under control by the use of a takedown. But even here, Plaintiff's expert Mr. Noble agrees that "[t]he use of a take down and the control holds used to place handcuffs on Mr. Lunneen were objectively reasonable and consistent with generally accepted police practices."[43]

Plaintiff's expert Noble identifies only two things that he asserts were unreasonable; Sgt. Johnson's deployment of the taser and an alleged failure to take Lunneen out of a prone position *after* handcuffing. Each must be briefly addressed in turn.

### i. Plaintiff's Use of Force Expert Implicitly Admits that Sgt. Johnson's Taser Use was Reasonable

Plaintiff's expert suggests that Sgt. Johnson's use of the taser was an unreasonable use of force. However, Noble then concluded that Officer Wyss' use of pepper spray and Wyss and Johnson's decision to take Lunneen to the ground only a few seconds after the taser deployment were both "objectively reasonable and consistent with generally accepted police practices."[44] In explaining why the same was not true of the taser incident, Noble stated the following:

---

40    ECF No. 57-1, PageID.356; Expert Report of Jeffrey Noble, ¶ 32.
41    ECF No. 57-1, PageID.357; Expert Report of Jeffrey Noble, ¶ 35.
42    ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 42(b).
43    ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 43(c).
44    ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 42(b) and 43(c).

If the finder of fact determines that Mr. Lunneen was not at immediate threat of being struck by a vehicle and because Sergeant Johnson acknowledges the only reason he used his taser was to save Mr. Lunneen from being struck by a vehicle rather than any threat posed by Mr. Lunneen, the use of force by Sergeant Johnson was excessive, objectively unreasonable and inconsistent with generally accepted police practices.[45]

This is an odd statement for several reasons. It is told in reverse; unlike every other point of analysis in Noble's report, in this particular section, Noble casts doubt on Sgt. Johnson's suspicions and subjective state of mind. Noble opines that there was no reason for Sgt. Johnson to be concerned for the safety of himself or Lunneen. Yet, it is precisely this concern which Noble cites to justify the use of pepper spray by Wyss and the takedown by both officers only seconds later. And, while Noble appears to discount Sgt. Johnson's concern about Lunneen being near the road, Sgt. Johnson is clearly heard stating "you're gonna walk into traffic" and "there's cars coming, get down" immediately before deploying the taser.[46] This is in addition to the nearly two-dozen verbal commands that were made prior by Sgt. Johnson deploying the taser.[47]

Ultimately, the perspective which matters for the purposes of this analysis is that of Sgt. Johnson himself. As the Supreme Court and the 6th Circuit have explained, the "objective reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[48] Although the Court should

---

[45]    ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 41(g).

[46]    ECF No. 57-15, PageID.602; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson states "You're gonna walk into traffic" at 3:35:10, and "there's cars coming, get down" at 4:31:06.

[47]    ECF No. 57-15, PageID.601-602; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson instructs Lunneen to turn around twice between 3:08:18 and 3:11:21. Officer Johnson instructs Lunneen to put his hand behind his back four times between 3:13:01 and 3:23:06, including one distinct statements of prospective taser use. Officer Johnson instructs Lunneen to get down on his knees fourteen times between 3:26:23 and 4:28:03, including two statements of prospective taser use.

[48]    *Graham v. Connor*, 490 U.S 386, 396 (1989); *Williams v. City of Gross Pointe Park*, 496 F.3d 482, 486 (6th Cir. 2007).

examine the totality of the circumstances, the determination of qualified immunity must focus "on the split-second judgments made immediately before the officer used allegedly excessive force."[49] Sgt. Johnson twice yelled warnings about Lunneen entering the roadway before he deployed his taser. The split-second decision of Sgt. Johnson to use his taser was made out of a concern that a man in a state of "excited delirium" might be a danger to himself and/or the public. Sgt. Johnson's own recorded statements, made at the same time Lunneen was refusing to comply and moving away from the officers towards the roadway, fully support that Sgt. Johnson's actions were objectively reasonable. To believe otherwise, the Court must persuade itself that Officer Johnson's multiple statements to warn Lunneen of the roadway and traffic were mere pretext to justify his use of force. These sorts of arguments are rightly disfavored by this Court and should be rejected.

Sgt. Johnson's deployment of the taser was reasonable under the circumstances and the related use-of-force was, therefore, objectively reasonable and not akin to a violation of Lunneen's fourth amendment rights.

> **ii.    The Question of Lunneen's Placement After Arrest is More Properly Viewed as a Denial of Medical Care Question and Not Use of Force**

Plaintiff's expert suggests in his report that the Officers "failed to follow their training and place Mr. Lunneen in a recovery position for more than four minutes and 30 seconds after he had been secured and that failure was inconsistent with generally accepted police practices."[50] This appears to track to Plaintiff's Complaint that alleges that "[n]either Defendant Wyss nor Defendant Johnson tried to roll Jack [Lunneen] on to his side or back."[51] Plaintiff's claim that Sgt. Johnson used unreasonable force when he left Lunneen in a prone position fails because 1) Lunneen was

---

[49]    *Livermore v. Lubelan*, 476 F.3d 397, 407 (6th Cir. 2007).
[50]    ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 57(a).
[51]    Complaint, ¶ 87.

not left in a prone position; and 2) the "recovery position" is an issue of medical attention and not subject to the use-of-force analysis.

      1)      Prone Position

This argument is curious because it appears entirely divorced from what is visible in the video and even from Noble's own rendition of the facts of the case. In the immediate preceding paragraph of Noble's report he asserts that Lunneen was "laying slightly on his side" after the handcuffing.[52] Additionally, and in support of Noble's assertion that Lunneen was not placed in a prone position, Sgt. Johnson's body cam depicts Lunneen on his side.[53]

Additionally, and as important, Noble states that Lunneen was in this "prone position" as a result of his "large stomach and not any action by the officers."[54] Therefore, there is no evidence establishing (or even suggesting) that the officers used force to place Lunneen in a prone position after the handcuffing. In either event, the evidence viewed in the best light for Plaintiff, the video and Plaintiff's expert's testimony show that Lunneen was not in the prone position. If deemed in the prone position, then the evidence is that Plaintiff's expert states that Lunneen's prone position is due to no "action by the officers."[55]

Therefore, there can be no "use-of-force" issue related to Lunneen being left in the prone position.

---

[52]     ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 56(c).
[53]     **Exhibit A** - Johnson Body-Camera Video Footage – Lunneen shown on his side at 5:50:05 upper-right corner time-stamp
[54]     ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 56(c).
[55]     ECF No. 57-1, PageID.360; Expert Report of Jeffrey Noble, ¶ 56(c).

2)	Recovery Position is a Medical Term and Medical Issue (not Use-of-Force)

Further, there is no allegation in this case that Sgt. Johnson engaged in a use-of-force of Lunneen after the handcuffs are placed *other than* the now defunct claim that he was left in the prone position.

It was within twenty-seconds after handcuffing that Sgt. Johnson recognized that Lunneen needed medical attention.[56] Their actions at that moment, almost immediately after handcuffing, are actions related to assistance of medical attention and are no longer actions related to detainment, arrest, or using force. Noble's own language of the placement of a suspect in a "recovery position" highlights this contention. Thus, Plaintiff's presentment of the positioning of Lunneen after he was handcuffed is a denial of medical attention claim.

In summary, there is no basis to find that Sgt. Johnson acted unreasonably in relation to the claim of leaving Lunneen in the prone position. Sgt. Johnson is entitled to qualified immunity as to the use-of-force claim of prone positioning.

**C.	Sgt. Johnson Did Not Act With Deliberate Indifference as to Providing Medical Attention and is Entitled To Summary Judgment On The 42 U.S.C. § 1983 Fourteenth Amendment Denial Of Medical Attention Claim**

Additionally, Plaintiff alleges that both Officers denied Lunneen access to medical attention. This argument is entirely divorced from the available video evidence and contrary to established case law. In order to make such a claim, Plaintiff must affirmatively show that Sgt. Johnson was "deliberately indifferent" to Lunneen's medical needs.

---

[56]	ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Lunneen is handcuffed at 7:41:16. Johnson radios into dispatch at 7:55:26 and reports Lunneen as having trouble breathing at 8:06:06.

This allegation is based on the notion that Sgt. Johnson did not personally administer medical assistance in the form of life-saving measures (such as C.P.R.). This claim, however, is contrary to 6th Circuit case law, particularly *Rich v. City of Mayfield Heights*.[57] In *Rich*, the court held that the Due Process Clause does not require officers to personally administer first aid or other emergent treatment.[58] The court found the duty under the Due Process Clause is fulfilled when an officer summons medical care.[59] More recently, in *Thomas v. City of Columbus*,[60] this Court applied the proper standard and held that the officer met his constitutional duty when he promptly summoned medical personnel, and did not interrupt in the provision of it. That is the law in this circuit, and those are the facts of this case. Summary judgment is proper.

As noted above, less than a minute after making first contact with Lunneen, Sgt. Johnson radioed dispatch to request a medic while stating that Lunneen appeared to be in a state of "excited delirium."[61] Sgt. Johnson sought medical care, not as a mere last resort, **but as a first instinct.** And, indeed, even after Lunneen was handcuffed, Sgt. Johnson radioed dispatch to again request medical support.[62] At that time, Sgt. Johnson informed dispatch that Lunneen was having trouble breathing.[63] Dispatch advised that the paramedics were nearby and Sgt. Johnson advised them the situation was a "priority one".[64] The paramedics proceeded to drive to the wrong location and Sgt.

---

[57] 955 F.2d 1092 (6th Cir. 1992).
[58] *Id*. at 1097.
[59] *Id*. at 1097-98.
[60] 854 F.3d 361 (6th Cir. 2017),
[61] ECF No. 57-15, PageID.600-601; Officer Roger Johnson Body Camera Interaction Markers. First contact at marker 1:10:21, Request for medic at marker 2:00:02.
[62] ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Lunneen is handcuffed at 7:41:16. Johnson radios into dispatch at 7:55:26 and reports Lunneen as having trouble breathing at 8:06:06.
[63] *Id.*
[64] ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Dispatch advises that they are "just passing the fairgrounds" at 8:25:24; Officer Johnson advised it was a "priority one" at 8:26:14.

Johnson made attempts to flag them down as they were within sight of the Lunneen's location.[65] Sgt. Johnson crossed the road to flag down the EMT while waving his arms and shining his flashlight in the EMT's direction.[66] After the EMT arrived at the correct location (with the affirmative assistance of Sgt. Johnson flagging their attention), Sgt. Johnson personally assisted the EMT's by asking them what he could do and then retrieving a chest compression device from the EMT vehicle.[67] In short, Sgt. Johnson took clear and consistent steps to get medical attention for Lunneen. This is, in every sense of the word, the ***opposite*** of indifference.

Even if there were an affirmative duty to promptly administer medical care (which there is not), its application would be absurd on these facts. As noted, Sgt. Johnson was advised within seconds of handcuffing that the EMT would be on site imminently, and, they then appeared at in the wrong location. It would make little sense for Sgt. Johnson to begin attempting to resuscitate Lunneen when the individuals better trained and prepared to provide him care were practically within eyesight. His actions served to get the trained EMT to the correct location as soon as possible.

An officer meets his constitutional duty when he promptly summons medical personnel and does not interrupt in the provision of care. In this case, Sgt. Johnson promptly summoned medical care on two occasions and then assisted in assuring that the care was notified of the correct location. There is no evidence whatsoever that Sgt. Johnson interrupted the provision of care.

---

[65] ECF No. 57-15, PageID.603; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson sees the EMT vehicle at the wrong building and comments "comeon, look around" at 8:51:25.

[66] ECF No. 57-15, PageID.603-604; Officer Roger Johnson Body Camera Interaction Markers. Officer Johnson crosses street and yells "Over here!" at 9:51:04.

[67] ECF No. 57-15, PageID.605; Officer Roger Johnson Body Camera Interaction Markers. Johnson grabs LUCAS out of Paramedics expedition at 12:55:07. Note: LUCAS is a chest compression device.

To summarize, the standard for a claim of denial of medical attention does not require Sgt. Johnson to have attempted to resuscitate Lunneen, but merely requires him to summon medical assistance and "not interrupt in the provision of it." Under any definition, Sgt. Johnson surpassed this standard and this claim fails as to him.

### D. Plaintiff's Monell Claims for Unconstitutional Policy or Custom, Failure to Train, and Failure to Supervise against Berrien County and Sheriff Bailey Have no Factual Basis and Defendants are Entitled to Summary Judgment as a Matter of Law.

First of all, an action against the Defendant, L. Paul Bailey, in his official capacity, is equivalent to an action against the Defendant, Berrien County, on whose behalf the sheriff acted.[68] As such, the inclusion of Berrien County and Sheriff Bailey is duplicative. To permit the case to proceed to trial with both Defendants being identified when only a single cause of action exists would be prejudicial. Dismissal of Sheriff Bailey is warranted.[69]

Secondly, the law is clear that municipal liability under §1983 must rest upon a direct causal connection between the policy or custom of the governmental entity and the constitutional injury to the plaintiff.[70] Essentially, a municipality cannot be held liable under §1983 unless its policies are the "moving force" behind the Constitutional violation. *Respondeat superior* or vicarious liability does not attach under §1983.[71] Plaintiff must prove that a particular policy, custom, practice, or a specific lack of training of specific personnel caused the alleged indifference of the Individual Defendants.[72]

---

[68] *Monell v Department of Social Services*, 436 US 658 (1978).
[69] *Kentucky v Graham*, 473 US 159, 165-166 (1985); *Soper v Hoben*, 195 F3d 845, 853 (6th Cir 1999).
[70] *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389 (1989), quoting *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).
[71] *Canton, supra,* at 385.
[72] *Canton, supra* at 391.

Plaintiff cannot provide any evidence that a particular policy, practice, custom, or lack of specific training by the Defendant County caused the alleged deliberate indifference by the Individual Defendants. Plaintiff cannot support the claim against Berrien County solely on the conduct of the Individual Defendant since *respondeat superior* is not available as a theory of recovery against a municipality under §1983. Plaintiff must show that the County *itself* is the wrongdoer.[73] As held in *Doe v. Claiborne County, Tennessee, et al*, a plaintiff must show that the particular injury claimed was incurred *because* of the execution of the policy.[74]

The facts of this case are devoid of any evidence through which a *Monell* claim could be sustained. Plaintiff's expert Noble does not identify any policy or custom on which a *Monell* claim could be based, and there is no evidence which establishes (or even suggests) that a Berrien County policy was a "moving force" behind any Constitutional violation. Indeed, on these facts, it does not even appear that there was a Constitutional violation at all. Therefore, Plaintiff will not be able to provide any evidence to support the claim against Berrien County and absent such evidence the County is entitled to dismissal.

## V.    CONCLUSION

There is simply no basis to conclude that any act or acts by Sgt. Johnson caused or contributed to Mr. Lunneen's death. To the contrary, the record shows that Mr. Lunneen was in a state of drug-induced "excited delirium" and Plaintiff's own expert concedes that restraining and arresting him was appropriate and reasonable on these facts. Sgt. Johnson's requested medical assistance for Lunneen, and frantic attempts to redirect the EMT to the proper location, are the

---

[73]    *Collins v. City of Harker Heights, Texas*, 503 U.S. 15, 112 S. Ct. 1061, 117 L.Ed.2d. 261 (1992).

[74]    103 F.3d. 495, 507 (6th Cir. 1996) citing *Garner v. Memphis Police Department*, 8 F.3d. 350, 364 (6th Cir. 1993)[Emphasis in the original].

opposite of indifference. On these facts, Sgt. Johnson is entitled to qualified immunity and this case should not proceed against him.

Wherefore, the Berrien Defendants move this Honorable Court to dismiss all counts of Plaintiff's Complaint in favor of these Defendants, with prejudice and without costs, pursuant to Fed. R. Civ. P. 56(a) with any additional relief that justice requires for the reasons set forth above.

Respectfully submitted,

Dated: June 6, 2022          STRAUB, SEAMAN & ALLEN, P.C.


/s/ James T. McGovern
James T. McGovern  (P79410)
Attorney for Defendants Berrien County,
L. Paul Bailey and Roger Johnson


**PROOF OF SERVICE**

The undersigned hereby certifies that on the 6th day of June 2022, I electronically filed the foregoing document with the Clerk of the Court using the Electronic Case Filing System, which sent notification of such filing to all counsel of record registered to receive the same.


/s/  Barbara A. Mach
Barbara A. Mach
Legal Assistant to James T. McGovern
Attorney for Defendants Berrien County,
L. Paul Bailey and Roger Johnson

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing Brief complies with the limitations set forth in L. Civ. R. 7.2(b)(i), as this brief contains words in Times New Roman in 12 point, proportional type. The word processing software used to prepare this brief was Microsoft Word for Windows.

Dated: June 6, 2022           STRAUB, SEAMAN & ALLEN, P.C.

*/s/ James T. McGovern*
James T. McGovern  (P79410)
Attorney for Defendants Berrien County,
L. Paul Bailey and Roger Johnson