| Category 1: Force Science™ Based Opinions ||
| --- | --- |
| **List of Citations to Report** | **Example Excerpts** |
| *Sections*<br>Memory Recall Following Stressful Encounters", pg 39<br><br>§ 10, Human Factors Research, pg. 39–42, n.150<br><br>§ 11, "Cognition and Performance During Stressful Events", pg. 42–45<br><br>"The Rashomon Effect", pg 48–49<br><br>"Use of Force Training Rubrics and Memory", pg. 61<br><br>"Consideration of Time and the Selection of Options", pg 53–54<br><br>"Time often equals safety", pgs 53–54<br><br>"The Importance of Perspective: pgs 54–55<br><br>Perception of Threat"(pg 47)<br><br>*Others*<br>Pg 56, fns. 151, 152, 164-70, 172, 177, 191–201, 231, 256 | Discusses "action vs. reaction," including discussion of the psychological phenomena known as Hick's Law, the speed of a subject while seated and prone, "time distortion," or the "Tachy-psyche effect"; body alarm response or alarm reaction; situational awareness; perceptual narrowing; and auditory exclusion; application of various biomedical and neurological phenomena to the instant case. Citations to PsychologyDictionary.org, APA Dictionary of Psychology, the American Heritage Medical Dictionary, and Livingstone's Dictionary of Sport and Exercise Medicine.<br><br>"Despite their training, it is not uncommon for officers to experience many of the same effects as victims, witnesses, and other parties, in believing that events take much longer to occur than they actually do, or that they occur more quickly. In some cases, events seem to telescope in officers' minds, causing them to not enumerate some details of a stressful encounter when reporting or memorializing an incident, while in other cases, things seem to slow down; perceive as if they were occurring in slow motion." (pg 42).<br><br>"Because of the events surrounding the encounter in the street and parking area happened so quickly, failure of some of the participants to recognize and report some details, or to report them out of order, are likely indicators of tachypsychia." (pg 43).<br><br>"probation officers are seeking different information for a pre-sentence report than a plaintiff's attorney taking a deposition. Depending on the nature and purpose of the accounting, different details are often pursued for different purposes. Comparing such statements can lead to an impression that they are different for some nefarious, conspiratorial reason." (pg 44).<br><br>"When there is very little time in which to make a conscious decision, officers rely on their training and experience to guide their reaction to resistance or to a perceive threat, whether that be to themselves or to someone else. In effect, officers utilize their training as a mechanism for pre-thinking and pre-planning for various scenarios. In this way, officers can shorten the time required for decision making." (pg 61). |

| **Category 2: Force Science™ application, improper credibility determinations, unhelpful factual narratives** ||
| **List of Citations to Report** | **Example Excerpts** |
|---|---|
| **Force Science™ Application** ||
| *Sections* <br> "Use of Force Training Rubrics and Memory" (pg 61) <br> "Applicability of Training to this Incident" Pg 61–62 <br> *Pages* <br> 41–42, 45–47, 49, 54–56 ("in the instance case") | "Perhaps one of the best measures of the quality and quantity of training is the degree to which training is applied in the field, during situations that allow for little reaction time, when officers must rely on their training to shorten their reaction time to a perceived threat." (pg 61). <br><br> "When Lunneen essentially made the risk management decision for the Officers there was little time for methodical decision making." (pg 47). |
| **Improper, unhelpful factual narrative** ||
| *Sections* <br> § 3, "Incident Synopsis", pgs 9–11 <br> "General Summary of Incident", pgs 28–36 <br> "Officer James Wyss Training", pg 60–61 <br> "Sergeant Roger Johnson Training" (pg 61, fn. 255) <br> "What Officer Wyss and Sergeant Johnson Actually Knew When They Used Force" (pg 62) <br> *Pages* <br> 23–24, 62–63 | "There are other accusations stated in the '*Factual Allegations Common to All Claims*' portion of the Complaint. These include: . . . . I find no indication of this in the record provided to me." (pg 23). <br><br> "Wyss and Johnson are both winded. Johnson appears slightly unsteady as he tries to catch his breath." (pg 35). <br><br> "I note that, in addition to his regular in-service training, Johnson was on the Dive Team and the Tactical Response Unit, each of which typically trains for multiple long sessions each year, accounting for more than 1,100 additional hours of training over 11 years." (pg 61, n.55). <br><br> "Lunneen showed no signs of slowing down." (pg 62). "Lunneen was very strong." (pg 63). <br><br> "Wyss and Johnson . . . ended up just having to 'muscle' him to the ground" (pg 63). |
| **Unhelpful information for which expert testimony is unnecessary** ||
| *Sections* | "The primary difference between these two types of documents is that one is a set of expectations that officers are expected to follow except in extraordinary |

| | |
|---|---|
| "The Difference Between Rules and Procedures", pg 56–57<br><br>***Pages***<br><br>34, 61<br><br>***Footnotes***<br><br>203 | circumstances. The other is a set of suggested protocols outlining general expectations to be followed unless officers encounter situations that require a different approach." (Pg. 56).<br><br>"Law enforcement officers are entrusted with the power to deny someone their freedom in order to enforce laws, preserve the peace, and to make the world safer for everyone." (pg 61)<br><br>Stating the entities' departmental policies are "consistent with many guidelines that are in wide-spread use in departments today" and "meet these criteria" (pg 59). |
| **Witness Credibility** ||
| ***Sections***<br><br>"The Importance of Perspective", pgs 54–55<br><br>***Pages***<br><br>34, 45, 54–57, 59, 61 | Refers to Plaintiff's experts as "putative experts" (*E.g.*, 23, 24).<br><br>"The officers' BWC videos support their accounts of the incident. Their videos capture various statements and actions that are consistent with their reported narratives." (pg 34).<br><br>"Following the short, intense encounter in the street and parking area, Wyss and Johnson reported basic information regarding the encounter. Later, during their deposition testimony, they were each clearer in some details, and less clear in other details they reported.(pg 45).<br><br>Stating procedural guidelines are "suggested protocols outlining general expectations to be followed unless officers encounter situations that require a different approach." (pg 56).<br><br>"I hold the following opinions, each to a reasonable—or higher—degree of professional certainty." (pg 63). |

| Category 3: Explanation and Application of the Law ||
|---|---|
| **List of Citations to Report** | **Example Excerpts** |
| **Discussions of the law** ||
| *Sections* <br> "Use of Force by Officers–Generally", pg. 50 <br> "Use of Force Under *Tennessee v. Garner*", pgs 50–51 <br> "Use of Force under *Graham v. Connor*" pgs 51–53 <br> "The Necessity for or Reasonableness of Force and Control" pg. 56 <br> *Pages* <br> 47, 49, 54, 57, 72 <br> *Footnotes* <br> 30–31, 163, 171. 188–90, 196–97, 202, 204–206, 209–210, 212–228, 233, 237–41, 257 (citing case law); <br> 211 (citing U.S. Const.); 54, 247 (citing Black's Law Dictionary); 55 (defining deadly force per MCOLES); 29 (citing FRE 702) | "courts do not expect them to be perfect" and opines that holding officers to "any other standard" than that set forth in Ninth Circuit precedent would be detrimental. (pg 47). <br><br> "courts have frequently held that a violation of a department procedural document—in and of itself—does not constitute a violation of the law, or of a person's constitutional rights" (pg 57). <br><br> 'It is my opinion that, under similar tense, uncertain, and rapidly evolving circumstances, other officers would believe it appropriate and permissible to act as Wyss and Johnson did." (pg 63). |
| **Application of the law** ||
| *Sections* <br> "Application of the *Graham Factors* to Wyss' and Johnson's Use of Force" pgs <br> *Pages* <br> 21–24, 52–56, 60, 63 <br> *Footnotes* | "The exact nature of [Plaintiff's] claim is not clear to me" (pg 21). <br> "Officer Wyss' and Sergeant Johnson's actions during the incident in question were consistent with each officer's departmental procedural guidelines." (pg 60). <br><br> "It is my opinion that, under similar tense, uncertain, and rapidly evolving circumstances, other officers would believe it appropriate and permissible to act as Wyss and Johnson did." (pg 63). |

|  |  |
|---|---|
| **Internal Departmental Guidelines vs. the Law** ||
| **Sections**<br>§ 15, "Generally Recognized Preferred Practices", pgs 56–57–59<br>**Footnotes**<br>244 | "There are no required criteria in the development of these managing documents, save those requirements put in place by statutes or the courts. So, in order to assure that their documents comply with the generally accepted and recognized preferred practices (which typically include meeting any required legal standards) . . . ." (pg 57).<br><br>"[C]ourts have frequently held that a violation of a department procedural document—in and of itself—does not constitute a violation of the law, or of a person's constitutional rights." (pg 57).<br><br>Equating a national, legal standard to a standard of care in practice (pg 58).<br><br>"[T]hese sample policy documents and other tools provide a basic framework; in no way could they be considered the definition of a standard" (pg 58–59). |
| **Category 4: Speculation** ||
| **List of Citations to Report** | **Example Excerpts** |
| **Sections**<br>All portions of Category 1, *supra*<br>All portions of Category 2, *supra*<br>**Pages**<br>34<br>**Footnotes**<br>116 | "Although the hour was late (approximately 1:45 am) the incident occurred in a mostly residential neighborhood; portions of the encounter were loudly shouted, potentially waking and drawing residents out of their homes." (pg 34).<br>"failure of some participants to recognize and report some details, or to report them out of order, are likely indicators of tachypsychia." (pg 43).<br><br>"During the struggle much of the audio is distorted due to background movement. It is likely there were more commands during the handcuffing event." (fn. 116). |