On 10/22/2018 at approximately 01:15 hours I was parked on S MECHANIC ST at the intersection with E FERRY ST in Berrien Springs, MI when a male, later identified as JACK LUNNEEN, ride a bicycle up to my patrol vehicle and asked to speak with me. I had difficulty understanding what JACK was saying but I did understand him mention that he was at the LITTLE'S house sometime that evening. JACK also mentioned SERGEANT JOHNSON from the Berrien County Sheriff Department (BCSD). JACK appeared agitated and had difficulty standing still or looking at me for more than a second or two. During our conversation, JACK stopped talking and rode away on his bicycle, saying that he was going to SPEEDWAY. I watched him ride away and then went to SPEEDWAY to see if he was there.

The SPEEDWAY parking lot was empty when I arrived, but I did see JACK across the street, headed toward the alley behind ROMA'S PIZZA. I attempted to follow him in my car but lost sight of him when I got to the alley. I exited the alley onto N MAIN ST and saw BCSD SERGEANT JOHNSON drive by on E FERRY ST. I followed him and waved him down on E JULIUS ST between S MAIN and S MECHANIC ST. I told SERGEANT JOHNSON that an unidentified male approached me and had mentioned SERGEANT JOHNSON. I asked SERGEANT JOHNSON if he knew who the male was and SERGENT JOHNSON said that he did not. While I was talking to SERGANT JOHNSON, Berrien County Dispatch sent me to 101 W UNION ST for a Malicious Destruction of Property (MDOP) complaint. Dispatch told me that the caller reported a male without a shirt on had broken a window on 101 W UNION ST, damaged an A/C unit, and was possibly still in the yard.

Prior to responding to the address, SERGEANT JOHNSON and I checked W UNION ST and the surrounding area for subjects matching the description from Dispatch. After approximately two minutes I went to 101 W UNION ST to meet with the caller, EILEEN DRY. Prior to contacting EILEEN I activated my body camera. EILEEN told me that just before she called for police- she did not remember the exact time- someone had come to her house and banged on the window. EILEEN said that the person pushed the window-mounted A/C unit through the window, breaking the glass in the process and yelling while he did it. EILEEN described the person who damaged her window and A/C unit a white male, between 45 and 55 years old, wearing only black pants. EILEEN said the male ran away between the time she called the police and I arrived. While I was talking to EILEEN, I saw a white male wearing only dark pants run across the yard of 313 N MAIN ST (across W UNION ST from 101 W UNION ST) and then turn the corner and head South towards the downtown area. The male was yelling but I could not understand what he was saying.

I followed the subject on foot and radioed SERGEANT JOHNSON, telling him that I was following the subject and informed him of my location and direction of travel. I lost visual contact with the subject, but I could still hear him. I checked a backyard on N MAIN ST but I did not see anything out of the ordinary. SERGEANT JOHNSON called on the radio and told me that he was with the subject on W MADISON ST. I returned to my patrol car and went to W MADISON where I found the subject kneeling in front of SERGEANT JOHNSON'S patrol car and SERGEANT JOHNSON standing near him. I recognized the subject as the one who had approached my car while I was parked on S MECHANIC ST.

The subject, who SERGEANT JOHNSON identified as JACK LUNNEEN, stood up and told us that he was an addict and that he had reached the end and he did not want anyone to kill him. I told JACK that no one was going to kill him and JACK started moving towards my patrol car. JACK appeared to be unaware of his surroundings, was walking back and forth, appeared to be agitated, and was shouting as if talking to people that were not present, behavior that I recognized as associated with Excited Delirium based on my training and experience. SERGEANT JOHNSON radioed Dispatch to ask for MEDIC 1 assistance because we had a possible case of EXCITED DELIRIUM and then asked me if I had probable cause for

**EXHIBIT 1**

arrest. I told SERGEANT JOHNSON that I did, so SERGEANT JOHNSON took out his handcuffs and we attempted to gain physical control of JACK but JACK broke our hold and walked away towards N CASS ST. SERGEANT JOHNSON unholstered his Taser and aimed it at JACK, telling JACK to get down onto his knees. Both of us gave JACK verbal commands to get down on his knees but JACK did not respond and kept backing away, moving toward N CASS ST. SERGEANT JOHNSON said that JACK was going to walk into oncoming traffic and I saw a car coming from the North. I took out my flashlight to wave the car away and JACK approached me with his arm raised as if to hit me. SERGEANT JOHNSON told me that he was going to deploy his Taser and fired a single cartridge at JACK. I saw one probe hit JACK in the torso, a light from the electric charge, and then JACK pulled the probe out. JACK appeared to be unaffected by the Taser. JACK stared moving S/B on N CASS ST and SERGEANT JOHNSON asked me if I had pepper spray. I took my pepper spray out of its pouch, put my flashlight into my left pocket, and deployed my pepper spray, hitting JACK on the side of the head. I deployed it a second time, hitting JACK in the face. JACK appeared to be unaffected by my pepper spray.

We were moving while this happened and when we reached the parking lot of 5/3 Bank, SERGEANT JOHNSON and I gained physical control of JACK. At this point, because of JACK's apparent disorientation and the fact that he walked into the road with oncoming traffic, I decided to attempt physically restrain JACK to prevent him from causing further injury to himself. We attempted to bring JACK down to the ground to execute prone handcuffing, but JACK pushed against us. I was able to sweep JACK'S legs out from under him with my right foot and brought JACK to the ground where JACK landed on his hands and knees. SERGEANT JOHNSON positioned himself above and behind JACK'S torso and attempted to pull JACK'S arms behind JACK'S back while I attempted to handcuff JACK. During the struggle JACK grabbed my left leg with his right arm and would not let go when I gave him several verbal commands to let go of me. I applied pressure to JACK's MANDIBULAR NERVE, commanded him to let go of me, and broke his hold on my leg. SERGEANT JOHNSON told me that he had JACK'S other arm, so I moved to the other side and cuffed JACK'S left arm. SERGEANT JOHNSON moved JACK'S other arm behind JACK's back and I handcuffed that arm as well.

JACK stopped moving after I cuffed both hands, and he fell to the ground after being on his hands and knees during our attempts to restrain JACK. I looked and it appeared that JACK was still breathing. SERGEANT JOHNSON said, "hey, wake up" to JACK and I shook JACK and attempted to apply a sternum rub. I noticed that JACK appeared to be bleeding from his nose and JACK moaned but did not otherwise respond. A MEDIC 1 paramedic car arrived at this point but parked across the street. SERGEANT JOHNSON and I waved, shined flashlights, and shouted to get the paramedic's attention and he came to our location after about two minutes. While we were trying to get the paramedic's attention I saw SERGEANT JOHNSON'S Taser on the ground so I kicked it away to prevent JACK from gabbing it. The paramedic asked us to roll JACK over and uncuff him which we did. SERGEANT JOHNSON retrieved his taser and taser cartridges. The paramedic began CPR with a chest compression machine and a CPR bag. Several BCSD deputies arrived. I went to my patrol car to move it to the parking lot and call Chief TOLIVER that I had been in a physical confrontation with a subject and the subject was severely injured and not responding to CPR. Chief told me to make sure that I document the incident and verify JACK'S condition with the hospital. MECIC 1 was ready to transport JACK to LAKELAND ST JOSPEH by the time I hung up with Chief TOLIVER and I followed the ambulance to the hospital. While I was en route to the hospital, SERGEANT JOHNSON called me and gave me JACK'S full name and date of birth, asking me to relay the information the hospital ER.

When I arrived at the hospital I spoke with the ER staff who told me that JACK had died and DR. KRAUSS declared time of death at 02:30 hours. I gave them JACK'S biographical information and then Chief

TOLIVER to advise him of the situation. Chief TOLIVER told me to start a report and that he would be follow up with me later that morning. I advised SERGEANT JOHNSON that the hospital declared JACK deceased and then I cleared the call at 02:55 hours. At 03:30 hours I returned to 101 W UNION to photograph the damages to the window where I found a shirt that JACK was wearing when he approached me at S MECHANIC ST. I seized the shirt as evidence and returned to my department to begin my report.

Nothing follows.

James N. Wyss
Berrien Springs Oronoko Township Police Department
Patrol Officer