UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

ESTATE OF JACK C. LUNNEEN, deceased,
by Thomas E. Lunneen, personal representative,

             CASE NO. 1:20-cv-01007

  Plaintiff,         HON. HALA Y. JARBOU

v.             MAG. JUDGE PHILLIP J. GREEN

BERRIEN SPRINGS, a village, ORONOKO
TOWNSHIP, a municipal corporation, BERRIEN
COUNTY, a municipal corporation, JAMES WYSS,
in his individual capacity and in his official capacity
as officer for Berrien Springs-Oronoko Township
Police Department, ROGER JOHNSON, in his
individual capacity and in his official capacity as a
deputy for the Berrien County Sheriff's Department,
L. PAUL BAILEY, in his individual capacity and in
his official capacity as Sheriff of the Berrien County
Sheriff's Department, PAUL E. TOLIVER, in his
individual capacity and in his official capacity as
Chief of Police for the Berrien Springs Oronoko
Township Police Department, and JOHN DOES 1–
10, *in their individual and official capacities*,

  Defendants.

---

| | |
|---|---|
| SEAN W. DREW (P33851) | G. GUS MORRIS (P32960) |
| DREW LAW OFFICE | ROBERT W. VANWERT (P70957) |
| Attorney for Plaintiff | **McGRAW MORRIS P.C.** |
| 302 Sycamore Street | Attys for Defs Berrien Springs, |
| P.O. Box 880 | Oronoko Twp, Wyss and Toliver |
| Niles, Michigan 49120 | 2075 W. Big Beaver Road, Ste. 750 |
| (269) 683-5121 | Troy, MI  48084 |
| drewlawoffice@gmail.com | (248) 502-4000 |
| | gmorris@mcgrawmorris.com |
| | rvanwert@mcgrawmorris.com |

| NOAH W. DREW (P74355) | JAMES T. McGOVERN (P79410) |
| --- | --- |
| THE SPENCE LAW FIRM | JAMES M. STRAUB (P21083) |
| Co-Counsel for Plaintiff | STRAUB, SEAMAN & ALLEN, P.C. |
| 15 South Jackson Street | Attys for Berrien County, Bailey & Johnson |
| P.O. Box 548 | |
| Jackson, Wyoming 83001 | 1014 Main Street, P. O. Box 318 |
| (307) 733-7290 | St. Joseph, MI 49085 |
| drew@spencelawyers.com | (269) 982-1600 |
| | jmcgovern@lawssa.com |
| | jstraub@lawssa.com |

# REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................... i
TABLE OF AUTHORITIES ............................................................................ ii
ARGUMENT ....................................................................................................1
I.    PLAINTIFF'S RELIANCE ON MARTIN IS MISGUIDED AND DEFENDANT WYSS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM. ............................................. 1
II.   PLAINTIFF'S RELIANCE ON EIBEL IS MISGUIDED AND DEFENDANT WYSS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM. ................................. 7
III.  PLAINTIFF'S MONELL CLAIM IS UNSUPPORTED AND SUMMARY JUDGMENT SHOULD BE GRANTED. ................................................... 10
IV.  PLAINTIFF'S GROSS NEGLIGENCE CLAIM IS FULLY REMISED ON HIS CLAIM OF EXCESSIVE FORCE AND SHOULD BE DISMISSED. ................................................................................................. 13
CONCLUSION ............................................................................................... 14

# TABLE OF AUTHORITIES

Cases

*Binay v. Bettendorf*, 601 F.3d 640 (6th Cir. 2010) ...................................................... 2
*Bletz v. Gribble*, 641 F.3d 743 (6th Cir. 2011) ........................................................... 13
*Blowers v. City of Battle Creek*, Case No. 21-cv-376, 2022 WL 109937 (W.D. Mich., January 12, 2022) ............................................................................................ 14
*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2016) ...................................... 3
*David v. City of Bellevue*, 706 Fed. Appx. 847 (6th Cir. 2017) ......................... 11, 12
*Dorsey v. Barber*, 517 F.3d 389 (6th Cir. 2008) .......................................................... 2
*Eibel v. Melton*, 904 F.Supp.2d 785 (M.D. Tenn. 2012) ........................................ 8, 9
*Kent v. Oakland County*, 810 F.3d 884 (6th Cir. 2016) .............................................. 4
*Martin v. City of Broadview Heights*, 712 F.3d 951 (2013) ............................. *passim*
*Meirs v. Ottawa County*, 821 Fed. Appx. 445 (6th Cir. 2020) ................................. 11
*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) ... 10, 11, 13
*Owensby v. City of Cincinnati*, 414 F.3d 596 (6th Cir. 2005) .................................... 9
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ............................................... 10
*Pierce v. Springfield Township*, No. 11-cv-847, 2013 WL 12099085 (S.D. Ohio, May 21, 2013) ............................................................................................................ 8
*Pineda v. Hamilton Cty.,* 977 F.3d 483 (6th Cir. 2020) ............................................ 11
*Pollard v. City of Columbus*, 780 F.3d 395 (6th Cir. 2015) ....................................... 3
*Rich v. City of Mayfield Heights*, 955 F.2d 1092 (6th Cir. 1992) .............................. 8
*Stewart v. City of Memphis*, 788 Fed. Appx. 341 (6th Cir. 2019) ........................... 11
*Wiley v. City of Columbus*, 36 F.4th 661 (6th Cir. 2022) ........................................... 5
*Wilkerson v. City of Akron,* 906 F.3d 477 (6th Cir. 2018) .......................................... 8

# ARGUMENT

I. **PLAINTIFF'S RELIANCE ON *MARTIN* IS MISGUIDED AND DEFENDANT WYSS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIM.**

Plaintiff relies upon *Martin v. City of Broadview Heights*, 712 F.3d 951 (2013) in support of the argument that summary judgment should be denied. Specifically, Plaintiff argues that if the actions of the officers in *Martin* were found unreasonable, then the actions of the Defendants here must also be unreasonable. However, *Martin* should be factually distinguished from the instant case. This Court should find that the actions of Officer Wyss were objectively reasonable, he is entitled to qualified immunity, and summary judgment should be granted.

In *Martin,* the initial responding officer arrived and located Martin who was naked at the time. Martin initially asked to be taken to jail and placed his hands behind his back before jogging away. The responding officer then tacked Martin, falling on top of him. Additional officers got on Martin's back and struck Martin with knees to the side, "hammer punches" and blows to the face, back, and ribs, and one officer wrapped his arm around Martin's neck. A fourth officer then kneeled on Martin's knees while the other officers were on Martin's back applying handcuffs. After Martin was handcuffed, two officers continued to hold Martin in a face-down position. There, the Court found that the officers were not entitled to qualified immunity and summary judgment was denied.

The actions of Officer Wyss should be contrasted with the actions of the officers in *Martin*. Here, there was no immediate escalation to the use of severe force. Instead, when Officer Wyss first made contact with Lunneen he calmly attempted to speak with Lunneen. Officer Wyss walked up to Lunneen, said "Hello," ordered him to stay on the ground, and asked "what's going on tonight, man." A short time later, Officer Wyss, with the assistance of Deputy Johnson, attempted to lawfully arrest Lunneen, who resisted, pulled away, and began walking away from the officers. Officer Wyss again used restraint and did not escalate the situation by utilizing force. Instead, Officer Wyss continued to give repeated commands to Lunneen to "get down" and "get on your knees." Lunneen failed to comply with each and every one of these verbal commands issued by Officer Wyss in an attempt to control the situation.

Eventually, Deputy Johnson utilized a Taser against Lunneen only after Lunneen raised his hand as to strike Officer Wyss. (ECF No. 81-1, PageID.780-781). However, it is not permissible to lump the conduct of all Defendants together. Rather, "[e]ach defendant's liability must be assessed individually based on his own actions." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Dorsey v. Barber*, 517 F.3d 389, 399 n.4 (6th Cir. 2008)). An individualized analysis of a defendant's actions must be done "to ensure that a defendant's liability is assessed based on his own individual conduct and not the conduct of others." *Pollard v. City*

*of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015). While the conduct of Deputy Johnson in deploying his Taser at Lunneen was objectively reasonable based upon the totality of the circumstances, this conduct is not attributable to Officer Wyss.

Next, Officer Wyss deployed OC spray against Lunneen only after Lunneen ignored repeated commands to "stay there" and "stay back" and charged at Officer Wyss. (ECF No. 81-4, at 18:20). Officer Wyss then again instructed Lunneen to "get down on your knees", to no avail. When Officer Wyss again attempted to grab Lunneen, he violently flailed his arms and continued resisting. Only then did the officers take Lunneen to the ground during their attempts at placing handcuffs on Lunneen.

Further, there is absolutely no evidence that the officers struck Lunneen or employed "gratuitous violence" while Lunneen was on the ground. Plaintiff makes the unsupported allegation that "the officers used additional, physical force while on the ground and attempting to secure handcuffs." (ECF No. 98, PageID.1274). This assertion is wholly unsupported. Plaintiff is relying "merely on the allegations of [his] pleadings" which is insufficient to withstand a motion for summary judgment. *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2016). Plaintiff's unsupported allegation also ignores the undisputed fact that Lunneen was injured and had blood on his body before the officers ever had contact with him. (ECF No. 100-8, PageID.1352).

Plaintiff's argument that Lunneen's "non-compliance . . . does not constitute resistance of any kind" is not credible. Lunneen actively pulled away from Officer Wyss and Deputy Johnson when they attempted to make a lawful and valid arrest. Lunneen then failed to comply with repeated commands given by Officer Wyss and Deputy Johnson in attempts to control the situation in a non-violent manner. Before Deputy Johnson utilized his Taser, Lunneen raised his hand as if to strike Officer Wyss. (ECF No.81-1, PageID. 780-781). Lunneen later charged at Officer Wyss while ignoring commands to "stay there" and "stay back." At this time "[i]t appears that Mr. Lunneen is making a punching motion toward Officer Wyss." (ECF No. 57-1, PageID.354, ¶ 15). Next, when the officers attempted again to take Lunneen into custody, he responded by violently flailing his arms around and again pulling away from the officers. When Lunneen was taken the ground, his resistance continued as he refused to place his hands behind his back in order to be handcuffed. These actions all constitute resistance by Lunneen and created a "tense, uncertain, and rapidly evolving" situation." *See Kent v. Oakland County*, 810 F.3d 884, 890 (6th Cir. 2016).

Finally, no weight or force was applied to Lunneen's body after he was handcuffed. Plaintiff relies again on *Martin* where the officers "continued to hold Martin in a face-down position" and one even "admitted that he applied force to Martin's body after Martin was handcuffed." *Martin*, 712 F.3d at 955, 955 n.1. The

4

Court in *Martin* found that "the prohibition against placing weight on Martin's body *after* he was handcuffed was clearly established in the Sixth Circuit as of August 2007." *Id.* at 961. Here, there was absolutely no weight or force applied to Lunneen's body after he was handcuffed and detained. During the struggle, only Deputy Johnson was on Lunneen's back, not Officer Wyss. After Lunneen was handcuffed, Deputy Johnson immediately removed himself from Lunneen's back and Officer Wyss merely held onto the handcuffs. There was no weight, pressure, or force applied to Lunneen after he was handcuffed. (ECF No. 81-5, at 9:38). Further, after Lunneen was placed in handcuffs he was not face down and prone. The video footage establishes that his face was off to the side, his right shoulder was in the air, and his belly was sticking out to the side. (ECF No. 81-5, at 8:25-8:38, 9:30-9:38).

The *Martin* case was recently analyzed and distinguished by the Sixth Circuit in *Wiley v. City of Columbus*, 36 F.4th 661 (6th Cir. 2022).[1] There, the responding officers were dispatched on reports of an individual who was overdosing. Upon arrival, they encountered the Plaintiff's decedent who failed to comply with commands, ran into the street, and ran from the officers. When the decedent fell, an officer fell on top of the decedent to restrain him. The decedent continued resisting and the officers applied a 'maximum resistor" maneuver before the decedent was

---

[1] *Wiley* was not cited by Officer Wyss in his motion for summary judgment because this opinion was decided and filed on June 2, 2022. Defendant Wyss's motion for summary judgement was filed on June 6, 2022.

handcuffed. The decedent continued resisting after being handcuffed and was taken to the ground while an officer went to retrieve a hobble strap. The Court noted that there was a concern that the decedent "was overdosing and needed immediate medical attention, but so long as Thomas continued kicking paramedics could not safely treat him." *Id.* at 665-666. The officers again utilized the "maximum resistor" technique, one officer had a knee in the decedent's lower back/hip area, and one had a knee in the decedent's shoulder. The decedent stopped resisting, went into cardiac arrest, and died nine days later.

The Plaintiff brought suit alleging excessive force in violation of § 1983 and various state law claims. The district court granted summary judgment in favor of the defendant officers and the Plaintiff filed an appeal. The Sixth Circuit affirmed the district court's granting of summary judgment and distinguished the cases relied upon by the Plaintiff. First, the Sixth Circuit distinguished *Champion* and recognized there the Plaintiff "was face down, handcuffed, and bound at the ankles by a hobble strap," and "was no longer resisting, and officers continued putting weight on his back." *Id.* at 669. Next, the Sixth Circuit distinguished *Martin* and recognized there the "officers lay on Martin, fell on him, dropped a knee into his side, punched his face and torso repeatedly, wrapped his pelvis area with one officer's legs and then gripped his chin and neck, and kneeled on his calves." *Id.* at 670. Further, "at one point three officers were on top of Martin." *Id.* Therefore, even though all of the

6

actions at issue occurred after the decedent was handcuffed, the Sixth Circuit held that "[t]he facts in the instant case are distinguishable; *Martin* does not offer a clearly established right against the measures used to restrain Thomas nor is it applicable to the circumstances presented by Thomas's combative behavior." *Id.*

The facts here are also distinguishable from those present in *Martin*. Lunneen's behavior was much more combative than the resistance offered by the decedent in *Martin*. Further, unlike in *Martin*, Lunneen was not taken to the ground until nearly four minutes after Officer Wyss had contact with him. In those four minutes, Lunneen resisted a lawful arrest, ignored repeated commands that were made to control the situation, charged at Officer Wyss, and raised his hand as if to strike Officer Wyss. In those four minutes, Officer Wyss attempted to control the situation utilizing verbal commands to no avail. During the subsequent struggle Officer Wyss did not strike Lunneen and only Deputy Johnson was on Lunneen's back at one point in time. After Lunneen was handcuffed, no force was applied and no pressure was placed on Lunneen's back. The actions of Officer Wyss were objectively reasonable based upon the totality of the circumstances. Officer Wyss is entitled to qualified immunity, and summary judgment should be granted.

II. **PLAINTIFF'S RELIANCE ON *EIBEL* IS MISGUIDED AND DEFENDANT WYSS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM.**

Plaintiff relies upon *Eibel v. Melton*, 904 F.Supp.2d 785, 807 (M.D. Tenn. 2012) in arguing that Officer Wyss is not entitled to qualified immunity. *Eibel* is a district court case out of the Middle District of Tennessee and therefore does not establish binding precedent. Further, Plaintiffs in other cases have unsuccessfully attempted to cite *Eibel*. In *Pierce v. Springfield Township*, No. 11-cv-847, 2013 WL 12099085 (S.D. Ohio, May 21, 2013), the district court rejected Plaintiff's attempts to rely upon *Eibel*. There, the Court held that "[b]y immediately calling for EMT's, the officers fulfilled their duty to respond to Drummond's serious medical needs." *Id.* at *6. The Court noted "Plaintiff's cite [*Eibel*] in their brief, but this case is not binding, and as just indicated by the Court's discussion of *Scozzari*, is contrary to binding precedent." *Id.* at *9 n.5.

As correctly recognized by the Southern District of Ohio in *Pierce*, the *Eibel* decision relied upon by Plaintiff is not binding and is in fact contrary to binding Sixth Circuit precedent. Instead, the binding precedent, cited by Defendant Wyss in his motion for summary judgment, establishes that "[w]hen police injure a person while apprehending him, they generally satisfy the Fourteenth Amendment by summoning medical care and not intentionally or recklessly delaying his access to it." *Wilkerson v. City of Akron,* 906 F.3d 477, 483 (6th Cir. 2018) (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1097-98 (6th Cir. 1992)). Plaintiff is asking this

Court to deny qualified immunity to Defendant Wyss by ignoring binding precedent and instead following non-binding precedent that is legally flawed.

Further, the *Eibel* opinion mischaracterizes and improperly expands the precedent established in *Owensby*. The Sixth Circuit in *Owensby* recognized that "each officer viewed Owensby in significant physical distress, yet made no attempt to summon or provide any medical care until several minutes later . . . ." *Owensby v. City of Cincinnati*, 414 F.3d 596, 603 (6th Cir. 2005). As cited by Plaintiff, the District Court in *Eibel* held that "[t]his very passage has been quoted for the proposition that *Owensby* involved not only the failure to summon medical care, but also the failure to provide medical care." However, this passage merely reflects the facts present in *Owensby*, and does not constitute an extension of precedent clearly establishing a constitutional violation. To the contrary, no binding precedent in the Sixth Circuit puts officers on notice that they must intervene personally to provide medical care. The facts here demonstrate that no clearly established right was violated. Medical assistance was requested very soon after the officers initially made contact with Lunneen and before any attempts were made to take him into custody. Additional requests for medical assistance were subsequently made and both Officer Wyss and Deputy Johnson attempted to get the attention of the responding paramedic who arrived at the wrong location. Officer Wyss is entitled to qualified immunity, and summary judgment should be granted.

## III. PLAINTIFF'S *MONELL* CLAIM IS UNSUPPORTED AND SUMMARY JUDGMENT SHOULD BE GRANTED.

In support of his *Monell* claim, Plaintiff relies partially on *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) for the proposition that "ratification of a single violative act is enough for municipal liability to attach." (ECF No. 98, PageID.1314). However, in order for the *Monell* claim to survive, the ratification must actually cause the injury complained of. The Supreme Court recognized that "'Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature *caused* a constitutional tort.'" *Id.* at 477 (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978)(emphasis added)). In *Pembaur*, police officers attempted to serve subpoenas at a medical office but were blocked from doing so. The officers contacted an Assistant Prosecuting Attorney who instructed them to "go in and get the [witnesses]." *Id.* at 473. The officers then obtained an axe, chopped down the door, and detained two individuals who subsequently brought suit.

In *Pembaur*, the ratification clearly resulted in the alleged Constitutional violation. However, here, there is no such link. Plaintiff cannot show that Chief Toliver's alleged failure to conduct an investigation led in any way to Plaintiff's alleged injuries. Next, Chief Toliver testified that in his tenure there had previously never been an in-custody death and there had never been a use of deadly force event. (ECF No. 81-7, PageID.923, p.40, ¶ 1-16). Further, Chief Toliver testified that he

had previously suspended an officer for a violation of policy. (ECF No. 81-7, PageID.923, p.38, ¶ 22-24).

Recent Sixth Circuit precedent establishes that summary judgment should be granted on Plaintiff's *Monell* claim. In *Pineda v. Hamilton Cty.,* 977 F.3d 483 (6th Cir. 2020), Plaintiff brought a "ratification" claim against a municipality alleging that the investigation into his use of force complaints was cursory. The Sixth Circuit affirmed the district court's granting of summary judgment and recognized that "[b]ecause municipal liability requires unconstitutional 'policy' or 'custom,' we have held that an allegation of a *single* failure to investigate a single plaintiff's claim does not suffice." *Id.* at 495. Therefore, "'a claim based on inadequate investigation' requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Id.* (citing *David v. City of Bellevue*, 706 Fed. Appx. 847, 853 (6th Cir. 2017)). "'[T]here must be multiple earlier investigations and they must concern comparable claims.'" *Id.* (citing *Stewart v. City of Memphis*, 788 Fed. Appx. 341, 344 (6th Cir. 2019)). "A plaintiff must show that the *entity's* unconstitutional custom – not just the *employee's* unconstitutional action – caused the plaintiff's injury." *Id.* "[T]here must be a 'link' between' the local entity's failure to investigate and the plaintiff's injury." *Id.* (citing *Meirs v. Ottawa County*, 821 Fed. Appx. 445, 453 (6th Cir. 2020)). Because "an entity's failure to investigate the plaintiff's specific claim will, by definition, come

11

*after* the employee's action that caused the injury . . . there can be no causation from that single failure to investigate." *Id.* (citing *David*, 706 Fed. Appx. at 853). The Sixth Circuit found that the Plaintiff failed to show how the "failure to investigate his one allegation could have caused his earlier injury from the deputy's alleged baton strike" and the Chief Deputy's "after-the-fact approval of the investigation did not cause [Plaintiff's] injury." *Id.* at 496.

Here, an investigation into the conduct of Officer Wyss *was* conducted. Chief Toliver testified that he was the one responsible for "where the investigation went for fact-finding" and he referred this investigation to the Michigan State Police. (ECF No. 81-7, PageID.926, p.50-51). The Michigan State Police then actually conducted an investigation by reviewing evidence and interviewing potential witnesses. (ECF No. 100-9, PageID.1354-1360). This investigation was then forwarded to the Berrien County Prosecutor's Office and Michael J. Sepic issued a report. (ECF No. 100-21, PageID.1528). In that report, Mr. Sepic found that "the officers conduct involving the deceased were exceptionally patient given his conduct"; "the deceased was not complying with their orders and their efforts to keep him safe," and the actions of the officers were "the least violent means available given the circumstances." *Id.* Mr. Sepic ultimately concluded that "there is certainly no criminal conduct associated with the officers' actions." *Id.* In addition, Chief

Toliver reviewed the evidence and the applicable policies and "did not find a violation of policy." (ECF No. 81-7, PageID.930, p.69, ¶ 3-8).

Here, an investigation did occur, both internally within the department and externally by the Michigan State Police. The external investigation was then reviewed by the Berrien County Prosecutor's Office. Further, Plaintiff has not established that any alleged failure to investigate caused the injuries complained of. Finally, Plaintiff has not established how a different investigation would have prevented these injuries. Therefore, Plaintiffs *Monell* claim fails and Defendants are entitled to summary judgment.

## IV. <u>**PLAINTIFF'S GROSS NEGLIGENCE CLAIM IS FULLY PREMISED ON HIS CLAIM OF EXCESSIVE FORCE AND SHOULD BE DISMISSED.**</u>

Here, Plaintiff's gross negligence claim is fully premised on his claim of excessive force and should be dismissed. *See Bletz v. Gribble,* 641 F.3d 743, 756 (6th Cir. 2011). Here, Plaintiff's gross negligence claim alleges that Defendant Wyss "owed decedent, Jack Lunneen, the duty to refrain from using deadly force until they had exhausted all other reasonable means of effecting his detainment and/or arrest," and Defendant Wyss "breached that duty by using excessive and/or deadly force on Jack Lunneen without the slightest attempt to use alternative means to apprehend him." (ECF No. 1, PageID.27). This court has recently rejected similar excessive force claims masquerading as a gross negligence claim. *See Blowers v. City of Battle*

*Creek*, Case No. 21-cv-376, 2022 WL 109937 (W.D. Mich., January 12, 2022). There, Plaintiff alleged that the officers owed the Plaintiff the "duty to use verbal means such as advice, warning, or persuasion before resorting to deadly force," the duty to exhaust all reasonable alternatives," and the "duty to exercise restraint in difficult situations . . . when handling citizens with mental disabilities." *Id.* at 13. This Court properly found that the Plaintiff's allegations were "based on intentional conduct, not negligence." *Id.* The same reasoning applies here and Plaintiff's gross negligence claim should be dismissed.

## CONCLUSION

Wherefore, for the foregoing reasons, and those raised in Defendant's Motion for Summary Judgment (ECF No. 81), this Court should grant Defendants' Motion for Summary Judgment.

Respectfully submitted,

**McGRAW MORRIS P.C.**

By: /s/Robert W. VanWert
G. GUS MORRIS (P32960)
ROBERT W. VANWERT (P70957)
Attys for Defs Berrien Springs, Oronoko Twp, Wyss and Toliver
2075 W. Big Beaver Road, Ste. 750
Troy, MI 48084
(248) 502-4000
gmorris@mcgrawmorris.com
rvanwert@mcgrawmorris.com

Dated: August 11, 2022